**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIANE FRANKLIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-307 CAS |
| | ) | |
| PINNACLE ENTERTAINMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER NUNC PRO TUNC

This matter is before the Court on defendant Pinnacle Entertainment, Inc.'s ("defendant") amended motion to dismiss plaintiffs' First Amended Petition ("Complaint") pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. Plaintiffs oppose the motion and it is fully briefed. For the following reasons, the motion will be granted in part and denied in part.

**Background**

This action was filed in the Circuit Court of the City of St. Louis, State of Missouri, on November 18, 2011, by sixty-seven plaintiffs asserting state law claims for breach of contract, employment discrimination in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010, et seq., and negligent and intentional infliction of emotional distress. The case arises out of the plaintiffs' layoff from employment at defendant's now-closed President Casino. Defendant removed the action to this Court pursuant to 28 U.S.C. §§ 1332 and 1441. Plaintiffs subsequently sought and were granted leave to file their Complaint, which adds several parties to the action and asserts additional claims for breach of contract and fraudulent and negligent misrepresentation. Defendant moves to dismiss all counts of the Complaint for failure to state a claim upon which relief may be granted.

**Legal Standard**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Cole v. Homier Dist. Co., Inc., 599 F.3d 856, 861 (8th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). To determine whether a claim is facially plausible, a court must "'accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.'" Id. (quoting Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005)). If a court "can infer from those factual allegations no more than a 'mere possibility of misconduct,' the complaint must be dismissed." Id. (quoting Iqbal, 129 S. Ct. at 1950)).

The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 129 S. Ct. at 1949-50 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. at 1950. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 562 (2007) (quoted case omitted).

**Discussion**

    A. Count 1 - Breach of Contract[1]

---

[1]The Complaint does not contain a count specifically labeled as "Count I." Plaintiffs' claim for breach of contract begins on page 2 of the Complaint, immediately under the heading "Plaintiffs' First Amended Petition." It is followed by Count II, labeled as such, on page 3.

Count I alleges that defendant breached an oral contract to transfer the plaintiffs to a different facility, or to rehire them, in return for their agreement to continue working at the President Casino until it closed. Defendant moves to dismiss Count I on the basis that it is devoid of the factual allegations necessary to establish a breach of contract claim, and instead merely recites the elements of such a claim. Defendant states that the Complaint fails to allege who made the agreement with plaintiffs and what its specific terms were, and asserts that plaintiffs' mere reference to an employee handbook is insufficient to establish the terms essential to an employment contract. Defendant also argues that even if it is assumed plaintiffs adequately pleaded the existence of an oral contract, the claim must still fail because the alleged oral contract as pleaded contains no definite term and alleges nothing more than a promise for continued at-will employment, which may be terminated at any time. Defendant relies on Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co., 344 S.W.2d 639, 642 (Mo. Ct. App. 1961), and Bethea v. Levi Strauss & Co., 827 F.2d 355, 359-60 (8th Cir. 1987).

Plaintiffs respond that their Complaint was modeled on the allegations in the case Jennings v. SSM Health Care St. Louis, 355 S.W.3d 526 (Mo. Ct. App. 2011), and that under Jennings, Missouri courts recognize a cause of action for breach of an oral contract in circumstances similar to the instant case. Plaintiffs assert that their Complaint alleges "what the promise consisted of, when it [was] made and broken, what consideration and reliance were given and the injury that was sustained." Pls.' Response at 2. Without further analysis, plaintiffs conclude, "Like in Jennings, this is all it takes to plead a cause of action for breach of a unilateral promise or contract." Id.[2]

---

[2]In the body of their opposition memorandum, plaintiffs request leave to amend their complaint by interlineation to allege that the promise was made by defendant's then-Director of Human Resources, Walter Robinson. The Court does not allow amendment by interlineation. See Order of March 13, 2012 at 1 [Doc.16]. Even if this amendment were allowed, plaintiffs would still be unable to state a claim for breach of contract.

Defendant replies that even if plaintiffs have sufficiently pleaded the "absolute minimum" required to state a claim, they fail to acknowledge that the contract as alleged is for employment for an indefinite period of time which may be terminated at any time for any reason under Missouri law, and therefore their breach of contract claim must fail.

As a threshold matter, the Court notes that plaintiffs argue their Complaint adequately states a claim because a similar claim was permitted to proceed in a state court decision, Jennings. Plaintiffs fail to recognize that the first issue before the Court is not whether a claim for breach of an oral employment contract is potentially viable under state law, but rather whether plaintiffs have adequately pleaded such a claim under the federal pleading standards set forth in the Supreme Court's Iqbal and Twombly decisions. Plaintiffs' response states that their case was removed to federal court, implying that their pleading is adequate under state pleading standards, but plaintiffs have previously been advised that federal pleading standards, not state pleading standards, apply to civil actions removed from state court. Christiansen v. West Branch Community Sch. Dist., 674 F.3d 927, 938-39 (8th Cir. 2012).[3] The Missouri Court of Appeals' Jennings decision does not address federal pleading standards. Also, plaintiffs amended their Complaint following removal, so there should be no doubt that federal standards apply.

The Complaint alleges in pertinent part that on March 10, 2010, defendant orally advised plaintiffs that the President Casino would be closing and they would be out of work, but if they continued to work they would be transferred and rehired at defendant's new facilities. Complaint at 2, ¶ 4. Defendant "is [sic] making its promise referred to [the] employee handbook regarding how the lay offs who [sic] be handled and the lay off procedures written therein." Id., ¶ 5.

_____

[3]See Order Concerning Removal of April 16, 2012 at 15, n.12 [Doc. 47].

4

Approximately six weeks later, on or about April 21, 2010, defendant advised plaintiffs they were being laid off and no retention would be offered for them to transfer to defendant's new facilities. Id., ¶ 6. Plaintiffs were told they could apply at defendant's other casinos as new employees, with no assurance of being hired and with no pay or seniority assurances. Id., ¶ 7. Plaintiffs demanded that defendant offer them their same positions at the new facilities, with the same salary, benefits and seniority. Id.,¶ 8. Plaintiffs assert that as a result of defendant's breach of the oral contract, they have each been damaged in an amount in excess of $10,000 for lost wages and benefits.

The Court finds that plaintiffs' breach of contract claim must fail, because plaintiffs do not allege that the parties agreed on the terms of continued employment and, more crucially, on a term for the duration of continued employment or limited the reasons for which plaintiffs could be discharged. Thus, at most, defendant only promised at-will employment which could be terminated at any time. In Missouri, "a valid employment contract must either specify the duration of employment or limit the reasons for which the employee may be discharged." Clark v. Washington Univ., 906 S.W.2d 789, 791 (Mo. Ct. App. 1995) (citing cases); see also Luethans v. Washington Univ., 894 S.W.2d 169, 172 (Mo. 1995) (en banc) ("Without a statement of duration, an employment at will is created which is terminable at any time by either party with no liability for breach of contract."), abrogated on other grounds, Keveney v. Missouri Military Acad., 304 S.W.3d 98, 102-03 (Mo. 2010) (en banc). "An employer may terminate an at-will employee 'for any reason or for no reason.'" Margiotta v Christian Hosp. Northeast Northwest, 315 S.W.3d 342, 345 (Mo. 2010) (en banc) (quoting Crabtree v. Bugby, 967 S.W.2d 66, 70 (Mo. 1998) (en banc)).

Plaintiffs' allegations of a promise of employment at defendant's other facilities are comparable to the facts of the Morsinkhoff case cited by defendant, 344 S.W.2d at 640-62. In Morsinkhoff, defendant DeLuxe Laundry orally agreed and promised to hire Morsinkhoff, with

5

employment to begin approximately one month later. In reliance on that promise, plaintiff quit his existing job, but DeLuxe then refused to hire him. Plaintiff sued DeLuxe for breach of contract on the theory that DeLuxe had made an oral agreement to employ him. The Missouri Court of Appeals held that because the contract was oral and for an indefinite period, it could be terminated at will by either party at any time, for any reason, without incurring liability. Id. at 642. This was so even though Morsinkhoff quit his job in reliance on DeLuxe's promise. Id. at 644-45.[4] Based on the principles articulated in Morsinkhoff and the Missouri decisions cited above concerning the at-will employment doctrine, plaintiffs' breach of contract claim in Count I fails as a matter of law.

Plaintiffs' vague reference to unspecified layoff provisions of defendant's employee handbook is not a factual allegation sufficient to create an enforceable employment contract. First, Missouri courts have consistently held that issuance of an employee handbook does not create an exception to the at-will employment doctrine or constitute a contractual offer. See Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 661-62 (Mo. 1988) (en banc); West Cent. Mo. Regional Lodge No. 50 v. Board of Police Comm'rs of Kansas City, Mo., 939 S.W.2d 565, 567 (Mo. Ct. App. 1997) (citing cases). This is because employee handbooks normally lack the traditional prerequisites of a contract – offer, acceptance, and consideration. Patterson v. Tenet Healthcare, Inc., 113 F.3d 832, 835 (8th Cir. 1997). Second, plaintiffs fail to make any factual allegations about the terms of

---

[4]The Court notes that in Bower v. AT&T Technologies, Inc., 852 F.2d 361, 364 (8th Cir. 1988), the Eighth Circuit concluded that Morsinkhoff would permit an award of damages based not on contract, but rather on the plaintiff's reasonable reliance on the defendant's promise. Shortly thereafter, the Missouri Court of Appeals sharply disagreed, finding Bower to be "in direct conflict" with the holding of Morsinkhoff. See Rosatone v. GTE Sprint Communications, 761 S.W.2d 670, 672-73 (Mo. Ct. App. 1988) ("[T]he statement in Bower that Morsinkhoff does not preclude an award of damages based on reliance clearly misconstrues the holding therein."). On remand from the Eighth Circuit in Bower, this Court, Judge Noce presiding, determined that Morsinkhoff and Rosatone were the "most authoritative statements of Missouri law" relating to the matter. Bower v. AT&T Techs., Inc., 1989 WL 251280, at *1 (E.D. Mo. Jan. 31, 1989).

the employee handbook and how it is relevant to their claims. As a result, the general rule of Missouri law that there is no "handbook exception" to the at-will employment doctrine applies here.

Defendant's motion to dismiss Count I should therefore be granted.

B. <u>Counts II and V - Fraudulent Misrepresentation</u>[5]

Count II of the Complaint alleges that defendant made false representations that it would transfer and rehire plaintiffs at defendant's new facilities if they continued to work at the President Casino until it closed. Count V alleges that defendant made false representations that it would pay the plaintiffs severance packages, sick leave and bonuses if they continued to work at the casino until it closed.

Defendant moves to dismiss Counts II and V on the basis that plaintiffs fail to meet the heightened pleading standard of Rule 9(b), Fed. R. Civ. P., applicable to a claim of fraudulent misrepresentation. Defendant states that under Rule 9(b), a plaintiff must plead the time, place and contents of the false representation and the identity of the person making the misrepresentation, and that plaintiffs fail to do so. Defendant asserts that plaintiffs fail to plead who made the misrepresentations, where they occurred, and exactly what was represented, and fail to allege facts suggesting that defendant made the alleged misrepresentations with the present intent not to perform.

Plaintiffs' response discusses only their reliance on defendant's promise to rehire or transfer them to the new casinos, and/or to pay them severance packages, and their right to rely. Plaintiffs state that they knew defendant was opening two other casinos, defendant promised to rehire them

_____

[5]The counts of the Complaint are not titled or named. In their opposition memorandum, plaintiffs describe Counts II and V as being for "intentional misrepresentation." Pls.' Response at 3. Fraudulent misrepresentation and intentional misrepresentation are synonymous under Missouri law and include the same elements. <u>See</u> <u>BMK Corp. v. Clayton Corp.</u>, 226 S.W.3d 179, 193 (Mo. Ct. App. 2007).

and had the capacity to keep its promise, so the failure to hire them "in light of these new casinos as promised was not known to them but only to defendant." Pls.' Response at 4.

Defendant replies that plaintiffs have not pleaded the necessary element of defendant's intent not to perform at the time it made the alleged promise, and that their Complaint provides nothing more than the alleged subsequent breach to support the theory that the alleged original promise was fraudulent. Defendant asserts that "Missouri courts have stated on numerous occasions that the necessary intent cannot be established merely by pointing to the defendant's subsequent breach." Cole, 599 F.3d at 874.

Under Rule 9(b), "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b), Fed. R. Civ. P. Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims." United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d 883, 888 (8th Cir. 2003) (cited case omitted). "Under Rule 9(b), a plaintiff must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. In other words, the party must typically identify the 'who, what, where, when, and how' of the alleged fraud." BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted).

The elements of an action for fraudulent misrepresentation under Missouri law are: "1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or his ignorance of its truth; 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of the falsity of the representation; 7) the hearer's reliance on the representation being true; 8) the right to rely thereon; and, 9) the hearer's consequent and proximately caused injury." Heberer v. Shell Oil Co., 744 S.W.2d 441, 443 (Mo.

1988) (en banc). The failure to establish any one of the elements is fatal to a fraud claim. <u>Dolan v. Rabenburg</u>, 231 S.W.2d 150, 154 (Mo. 1950). "When fraud is alleged the burden of proof as to each element falls on the party asserting the fraud and fraud is never presumed." <u>Magna Bank of Madison County v. W.P. Foods, Inc.</u>, 926 S.W.2d 157, 162 (Mo. Ct. App. 1996).

In addition, "It is well-settled that an unkept promise does not constitute actionable fraud unless it is accompanied by a present intent not to perform, in which case it constitutes a misrepresentation of a present state of mind—itself an existent fact." <u>Thoroughbred Ford, Inc. v. Ford Motor Co.</u>, 908 S.W.2d 719, 732 (Mo. Ct. App. 1995) (citing cases). Further, "The fact that the party did not ultimately perform is not enough, without more, to show that the promisor did not intend to perform when the promise was made." <u>Urologic Surgeons, Inc. v. Bullock</u>, 117 S.W.3d 722, 726 (Mo. Ct. App. 2003) (citing <u>Thoroughbred Ford</u>, <u>id.</u>).

Counts II and V of plaintiffs' Complaint allege that (1) defendant orally represented to them in March 2010 that plaintiffs would be rehired or transferred to defendant's new casinos, and/or would be paid severance packages, sick pay and bonuses, if they continued to work at the President Casino until it closed; (2) these representations were false; (3) the representations were rescinded in April 2010; (4) the representations were material because they induced plaintiffs to remain employed at the President Casino until it closed; (5) defendant knew the representations were false or did not know the representations were false at the time they were made but continued to make them; (6) plaintiffs relied on the representations "without knowing of it [sic] validity;" and (7) plaintiffs were damaged as a result.

The Court agrees with defendant that plaintiffs have failed to plead their fraudulent misrepresentation claims with sufficient particularity to meet Rule 9(b)'s requirements. Plaintiffs do not plead the "who, what, when, where and why" of the alleged fraud. Plaintiffs do not allege

any facts concerning the place of the representations or the name of the person or persons making them. Nor do plaintiffs allege facts concerning whether the representations were made to them individually or as a group, and whether the same person or persons made the representation to each plaintiff.[6] Plaintiffs allege generally that they were promised employment at defendant's new casinos if they remained at the President Casino until it closed, but allege no specific facts concerning the nature and scope of the promise – i.e., were they promised the same jobs at the new facilities, with the same pay, benefits and seniority as their old jobs?[7] Plaintiffs also allege generally that they were promised severance packages, sick pay and bonuses if they remained at the President Casino until it closed, but allege no specific facts concerning the nature and scope of the promise – i.e., the amount of the severance packages, sick pay and bonuses.

Plaintiffs also fail to allege any facts, as opposed to mere conclusions, tending to suggest that defendant made the alleged misrepresentations with the present intent not to perform consistently with its statements. "[A]bsent such an inconsistent intent there is no misrepresentation of fact or state of mind but only a breach of promise or failure to perform." Cole, 599 F.3d at 862 (quoted case omitted; applying Missouri law). Plaintiffs' allegations that defendant made the promises and then rescinded them a month later tends to suggest that defendant made the promises with a present intent to perform. Plaintiffs' allegations "are just as consistent with a present intent to perform as

---

[6]In their Response, plaintiffs seek leave to amend their Complaint by interlineation to state that Walter Robinson, then defendant's Director of Human Resources, made the promises regarding rehiring and severance packages. Even if the Court permitted amendment by interlineation, which it does not, see Order of March 13, 2012 at 1, this allegation is not enough to save plaintiffs' fraudulent misrepresentation claims, which are deficient for the additional reasons discussed above.

[7]The Complaint alleges that plaintiffs demanded that defendant hire them at the new casinos for their same stations/jobs, with the same pay, benefits and seniority, but it does not allege that defendant had ever promised it would do this.

they are with fraud," Cole, 599 F.3d at 863, and do no more than suggest that defendant, for one reason or another, changed its mind as to how it wished to staff its new casinos or compensate the plaintiffs. See Cole, 599 F.3d at 864. This is insufficient as a matter of law to state a claim for fraud. Id. See also Restatement (First) of Torts § 530 cmt. a (1938) ( "[O]ne who acts in justifiable reliance upon another's honest statement of his then existing intention cannot maintain an action for the loss caused by the disappointment of his expectations if the other for any reason, good or bad, changes his mind and fails" to perform.).

For these reasons, defendant's motion to dismiss Counts II and V should be granted.

C. Counts III and VI - Negligent Misrepresentation

In Count III, plaintiffs incorporate their allegations from Counts I and II that defendant promised it would rehire or transfer them to its new casinos if they continued to work at the President Casino until it closed, but allege instead that defendant "did not know the representations were false but continue[d] to make the representations so Plaintiff[s] would rely." Complaint at 4. Similarly, in Count VI, plaintiffs incorporate their allegations that defendant promised it would pay them severance packages, sick pay and bonuses if they continued to work at the President Casino until it closed, but allege that defendant "did not know the representations were false but continue[d] to make the representations so Plaintiff[s] can rely." Complaint at 7.

The elements of negligent misrepresentation under Missouri law are: (1) the speaker supplied or omitted information in the course of its business; (2) due to the speaker's failure to exercise reasonable care, the information was false; (3) the speaker provided this information in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, he or she suffered a pecuniary loss. Jennings, 355 S.W.3d at 537-38.

11

Defendant moves to dismiss Counts III and VI on the basis that Missouri law precludes recovery under negligent misrepresentation for statements of future intent, citing <u>Hoag v. McBride & Son Investment Co., Inc.</u>, 967 S.W.2d 157, 174 (Mo. Ct. App. 1998). Plaintiffs respond that they relied on defendant's promises, knowing that it was opening two other casinos and had the capacity to keep its promise, and continued to work at the President Casino keeping it operable until it closed. Plaintiffs cite the Missouri Court of Appeals' <u>Jennings</u> decision as supporting the existence of a negligent misrepresentation claim under the circumstances of this case.

Defendant is correct that "a negligent misrepresentation claim cannot arise from a statement regarding the speaker's future intent." <u>Hoag</u>, 967 S.W.2d at 174. This is because "it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions." <u>Id.</u> (quoting <u>Jacobs Mfg. Co. v. Sam Brown Co.</u>, 792 F. Supp. 1520, 1528 (W.D. Mo. 1992)). Thus, "a claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events." <u>City of St. Joseph, Mo. v. Southwestern Bell Tel.</u>, 439 F.3d 468, 478 (8th Cir. 2006) (citation omitted). However, "if 'the statement is a representation of the speaker's present intention or concerns matters within the speaker's control,' a cause of action for negligent misrepresentation exists. <u>Wellcraft Marine v. Lyell</u>, 960 S.W.2d 542, 547 (Mo. Ct. App. 1998) (quoting 37 C.J.S. Fraud § 59)." <u>City of St. Joseph</u>, 439 F.3d at 478. "Under this rule, there is liability for negligent misrepresentation as to a future event only if the event was under the speaker's control." <u>Wellcraft</u>, 960 S.W.2d at 547.

Viewing the Complaint's factual allegations in the light most favorable to plaintiffs, the Court finds that defendant's argument is unpersuasive. Plaintiffs allege that in March 2010, defendant promised the plaintiffs they would be transferred and rehired at defendant's new casino facilities, and/or would be paid severance packages, sick pay and bonuses, if they continued to work

at their current positions at the President Casino until it closed. Plaintiffs allege that they continued to work at the casino, but a month later defendant advised them they would be laid off and would not be transferred to defendant's other facilities after all, and it refused to pay them the promised severance packages, sick pay and bonuses. Finally, plaintiffs allege that defendant did open two new facilities, but did not offer any positions to the plaintiffs as transferees or rehires.

These allegations are sufficient to suggest that when the promise was made in March 2010, defendant had the present intention to transfer or rehire the plaintiffs at its new facilities and/or to pay them severance packages if they would continue to work at the President Casino until it closed, and that doing so was a matter within defendant's control. Cf. Mounger Constr., LLC v. Fibervision Cable Servs., LLC, 2012 WL 1745543, at *4 (E.D. Mo. May 16, 2012) (denying motion to dismiss negligent misrepresentation claim where complaint alleged that defendant represented it was procuring signage and plaintiff would be able to begin construction within one week, as this allegation suggested that defendant had the present intention to procure signage and doing so was within its control). In addition, the allegation that plaintiffs continued to work at the President Casino tends to show plaintiffs' reliance on defendant's promise. Cf. Jennings, 355 S.W.3d at 538 (allegation that plaintiff remained employed during transition period as a result of defendant's promise to pay severance pay indicated plaintiff's reliance on the promise). The Court therefore finds that plaintiffs have stated claims for negligent misrepresentation in Counts III and VI and this aspect of defendant's motion to dismiss should be denied.

D. Count IV - Breach of Contract

Count IV alleges that defendant breached an oral contract to pay plaintiffs severance packages, sick pay and bonuses, in return for their agreement to continue to work at the President Casino until it closed. Plaintiffs allege that they relied on this promise and continued to work at the

President until it closed, but defendant did not pay the severance packages, sick pay and bonuses as promised.

Defendant moves to dismiss Count IV on the basis that it fails to allege the elements of a claim for promissory estoppel, because plaintiffs fail to allege the existence of a contract with respect to the alleged promise for severance packages, sick pay and bonuses. Defendant also asserts that the alleged promise was not sufficiently definite to support a claim of breach of contract, and that plaintiffs fail to articulate how much each plaintiff is allegedly owed or how the severance, sick pay and bonuses would be calculated for each employee. Defendant also asserts that plaintiffs fail to adequately allege detrimental reliance because they do not allege that they turned down other employment opportunities or otherwise detrimentally relied on the alleged promise. Finally, defendant states that any reliance on the alleged promise could not be expected, because plaintiffs also allege that defendant rescinded the promise one month later.

Plaintiffs respond that defendant misinterpreted the Complaint, as Count IV asserts a claim for breach of an oral contract to pay them severance packages and other benefits if they continued to work at the President Casino until it closed. Plaintiffs assert that as in the Jennings case, they have alleged the breach of a unilateral contract because they plead that they continued to work at the President Casino until it closed, in reliance on defendant's promise.

Defendant's reply addresses Count IV as a breach of contract claim, and asserts that plaintiffs fail to state a claim for breach of contract because they fail to articulate the essential terms of the alleged contract, specifically how much the plaintiffs are allegedly owed and how the severance, sick pay and bonuses would be calculated for each employee. Defendant also argues that even if the specific terms of the severance, sick pay and bonuses were to be determined at a later date, plaintiffs' claims must fail because under Missouri law "an oral contract will not be found unless

the parties have reached an understanding as to *all* the essential terms of the agreement." Middleton Enters., Inc. v. Churm, 618 F. Supp. 477, 480 (E.D. Mo. 1985); see also Dancin Dev., L.L.C. v. NRT Missouri, Inc., 291 S.W.3d 739, 745 (Mo. Ct. App. 2009) (where parties reserved essential terms for future determination, there could be no breach of contract claim as no contract had been formed).

The essential elements of a contract in Missouri are: "(1) competency of the parties to contract; (2) subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation."[8] Dancin Dev., 291 S.W.3d at 745 (quoted case omitted). Defendant's motion to dismiss argues that the Complaint does not indicate the presence of mutuality of agreement because essential terms of the contract are not pleaded. "Mutuality of agreement is determined by looking to the intentions of the parties as expressed or manifested in their words or acts." Ketcherside v. McLane, 118 S.W.3d 631, 636 (Mo. Ct. App. 2003). "If the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement." Harrell v. Mercy Health Services Corp., 229 S.W.3d 614, 619 (Mo. Ct. App. 2007) (quoted case omitted).

The Court agrees that plaintiffs have failed to plead sufficient facts necessary to establish the existence of an oral contract, as there are no allegations concerning essential terms including how much the plaintiffs are allegedly owed and how the severance, sick pay and bonuses would be calculated for each plaintiff. Defendant's motion to dismiss Count IV should therefore be granted.

E. Count VII - Age Discrimination

Defendant moved to dismiss Count VII, in which fifteen plaintiffs assert claims of age discrimination in violation of the Missouri Human Rights Act, but withdrew this portion of its

---

[8]"Technically speaking, there is no 'mutuality of obligation' when discussing unilateral contracts." Ketcherside v. McLane, 118 S.W.3d 631, 635 n.1 (Mo. Ct. App. 2003) (citing Underwood Typewriter Co. v. Century Realty Co., 119 S.W. 400, 404 (Mo. 1909)).

motion in its reply memorandum. Accordingly, defendant's motion to dismiss Count VII should be denied as moot.

     F.  <u>Count VIII - Negligent and Intentional Infliction of Emotional Distress</u>

     Defendant moves to dismiss Count VIII, which asserts claims for negligent and intentional infliction of emotional distress, on the basis that plaintiffs fail to provide factual allegations to establish the elements of either cause of action. Defendant asserts that plaintiffs fail to state a claim for intentional infliction of emotional distress because they fail to allege that any of defendant's conduct was extreme or outrageous, or went beyond that which may take place during the normal course of an employer/employee relationship. Defendant states that all of plaintiffs' emotional distress claims are based on its alleged failure to rehire them or pay them severance packages and benefits, which does not rise to the level of extreme and outrageous conduct under Missouri law. With respect to negligent infliction of emotional distress, defendant asserts that plaintiffs fail to allege facts to show that defendant should have realized its conduct involved an unreasonable risk of causing distress, and plaintiffs' conclusory statement concerning their "medically diagnosable" condition is insufficient to establish a ground for recovery.

     Plaintiffs respond by requesting leave to amend their Complaint to allege that defendant's conduct was "extreme and outrageous." Plaintiffs state that their emotional distress claims are based on defendant's promises to rehire them and pay them severance packages, which it never intended to honor. Plaintiffs assert, "Promising employees future work opportunity and pay only to entice them to waive their rights to seek other employment goes without saying would cause emotional distress. Plaintiffs would argue this [is] especially true in these economic times." Pls.' Response at 6. Plaintiffs also assert that emotional distress "can be implied where there is [an] employer and employee relationship," citing <u>Boes v. Deschu</u>, 768 S.W.2d 205 (Mo. Ct. App. 1989).

Defendant replies that plaintiffs' proposed amendment to add the words "extreme and outrageous" to their Complaint is futile because plaintiffs will be unable to establish that defendant's conduct was sufficiently extreme and outrageous to survive a motion to dismiss.

1. Intentional Infliction of Emotional Distress

The Missouri Supreme Court has explained the elements of the tort of intentional infliction of emotional distress as follows:

> To state a claim for intentional infliction of emotional distress, a plaintiff must plead extreme and outrageous conduct by a defendant who intentionally or recklessly causes severe emotional distress that results in bodily harm. K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996). The conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Warrem v. Parrish, 436 S.W.2d 670, 673 (Mo. 1969). The conduct must be "intended only to cause extreme emotional distress to the victim." K.G., 918 S.W.2d at 799.

Gibson v. Brewer, 952 S.W.2d 239, 249 (Mo. 1997) (en banc). Under Missouri law, "It is for the court to determine, in the first instance, whether the defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery." St. Anthony's Med. Ctr. v. H.S.H., 974 S.W.2d 606, 611 (Mo. Ct. App. 1998) (cited case omitted).

After careful review of the Complaint, the Court finds that plaintiffs fail to state a claim for intentional infliction of emotional distress ("IIED") as a matter of law. Even if plaintiffs were granted leave to amend their Complaint to allege that defendant's conduct was extreme and outrageous, such an allegation would be a mere legal conclusion, not a fact entitled to be accepted as true.[9] When the Complaint's factual allegations are accepted as true and all reasonable inferences

---

[9]Plaintiffs have previously been advised that it is insufficient to merely ask for leave to amend a complaint in the body of a response to a motion to dismiss. "[T]o preserve the right to amend the complaint, a party must submit the proposed amendment along with its motion." Clayton v. White Hall Sch. Dist., 778 F.2d 457, 460 (8th Cir. 1985)." See Order of April 25, 2012 at 2 [Doc.

arising therefrom are weighed in plaintiffs' favor, the Complaint simply does not describe conduct by the defendant that was so outrageous in character and extreme in degree as to be "beyond all possible bounds of decency" and "regarded as atrocious and utterly intolerable in a civilized community." Plaintiffs allege only that defendant did not keep its promise to rehire them, or to pay them severance packages and other benefits. For an IIED cause of action to exist, the "defendant's conduct must be more than malicious and intentional." Polk v. INROADS/St. Louis, Inc., 951 S.W.2d 646, 648 (Mo. Ct. App. 1997). Defendant's conduct as alleged does not rise to that level.

As the Eighth Circuit has stated, "Missouri case law reveals very few factual scenarios sufficient to support a claim for intentional infliction of emotional distress. Rarely is a defendant's conduct sufficiently extreme and outrageous to warrant recovery." Kansas City Laser, Inc. v. MCI Telecomms. Corp., 252 F. App'x 100, 104 (8th Cir. 2007) (internal quotation marks and quoted case omitted); see Bailey v. Bayer CropScience L.P., 563 F.3d 302, 310 (8th Cir. 2009) (same). The instant case is not one of those rare cases. See, e.g., Morris v. Union Pac. R.R., 825 S.W.2d 911, 916 (Mo. Ct. App. 1992) (plaintiff's evidence that various of his supervisors threatened to fire him, laughed at a cartoon depicting him, watched him too closely, placed him on jobs for which he had no experience, and allowed him to be absent from work but then complained to him about his absenteeism, was insufficient to permit recovery on a claim of intentional infliction of emotional distress); Hendrix v. Wainright Indus., 755 S.W.2d 411, 412 (Mo. Ct. App. 1988) (plaintiff who alleged he was "continuously harassed and threatened with termination" in retaliation for filing a complaint with the Occupational Safety and Health Administration could not prevail on a claim of IIED because the defendant's conduct was not outrageous, although it was "undesirable" and

---

49] .

"illegal"); Comstock v. Consumers Markets, Inc., 953 F. Supp. 1096, 1106 (W.D. Mo. 1996) (plaintiff's claims that the epithet "bitch" was written on her time card, and that her supervisor held her responsible for duties she did not believe were hers, compared her legs to those of a co-worker, stated that women were meant to be subject to men, and frequently criticized her work, were "insensitive and unkind, but not outrageous"); cf. Polk, 951 S.W.2d at 648 (plaintiff stated a claim for IIED where she alleged that in retaliation for her report of a supervisor's misconduct, defendant altered company documents to make it appear plaintiff had taken more vacation time than she was authorized or entitled to take, had plaintiff followed at work (even on trips to the bathroom), made six prank phone calls to plaintiff's residence within a four hour period while she was on sick leave, told plaintiff's co-workers that plaintiff was to blame for the company's lack of success, and demoted her).

Plaintiffs' claim for IIED claim also fails because plaintiffs have not pleaded facts sufficient to establish that defendant's conduct was intended solely to cause them extreme emotional distress, see Kansas City Laser, 252 F. App'x at 104, or facts from which such an inference could be drawn. See Gibson, 952 S.W.2d at 249 (affirming dismissal of intentional infliction of emotional distress claim where plaintiffs' allegations did not "support the inference that the [defendant's] sole purpose in its conduct was to invade the [plaintiffs'] interest in freedom from emotional distress."). Defendant's motion to dismiss plaintiffs' claims for intentional infliction of emotional distress in Count VII should therefore be granted.

2. Negligent Infliction of Emotional Distress

"The tort of negligent infliction of emotional distress is a negligence action." Thornburg v. Federal Express Corp., 62 S.W.3d 421, 427 (Mo. Ct. App. 2001). "Any action for negligence requires the plaintiff to establish that the defendant had a duty to protect the plaintiff from injury,

the defendant failed to perform that duty, and the plaintiff's injury was proximately caused by the defendant's failure." Jarrett v. Jones, 258 S.W.3d 442, 448 (Mo. 2008) (en banc) (cited case omitted). Claims seeking recovery of damages for the negligent infliction of emotional distress also require proof of "two additional elements: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing distress and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant." Id. (citing Bass v. Nooney Co., 646 S.W.2d 765, 772-73 (Mo. 1983) (en banc)).

Defendant moves for dismissal of this claim on the grounds that (1) plaintiffs have not alleged that defendant should have realized its conduct involved an unreasonable risk of causing emotional distress, and (2) plaintiffs fail to state a claim of medically diagnosable emotional distress, and their conclusory statement concerning their "medically diagnosable" condition is insufficient to establish a ground for recovery.

Plaintiffs respond that "[e]motional distress can be implied where there is [an] employer and employee relationship," citing Boes, 768 S.W.2d 205, and that the Complaint "does allege a medically diagnosable illness. Depression it is alleged is the mental illness suffered by all." Pls.' Response at 6.

Defendant replies that it is unlikely plaintiffs could allege conduct that involved an unreasonable risk of causing distress as required to support a claim of negligent infliction of emotional distress because "defendant's alleged actions were fully within the normal context of the employer/employee relationship" and therefore fail as a matter of law. Def.'s Reply at 8-9.

In St. Anthony's Medical Center v. H.S.H., 974 S.W.2d at 611, the Missouri Court of Appeals held that the following allegations failed to plead an action for negligent infliction of emotional distress -- "defendant/counterclaimant . . . has been caused to suffer and in the future will

continue to suffer shame and humiliation and severe emotional distress . . . and has been caused to incur and in the future will be caused to incur expenses for psychiatric and psychological treatment, counseling, and medications …."  The court described this as a "conclusory statement that [the plaintiff] suffered shame and humiliation and severe emotional distress but failed to contain facts or allegations from which to infer medically diagnosable and medically significant emotional distress."  Id.

The Complaint in this action alleges that when defendant made promises to the plaintiffs and then withdrew them, these actions "caused Plaintiffs emotional distress where they were humiliated and depressed because of the lack of employment or severance to maintain their households all intended by intentional actions of the Defendant."  Complaint at 8, ¶ 3.  The only significant difference between the Complaint and the allegations in St. Anthony's Medical Center is that plaintiffs included the specific term "depression" in their allegations.  The next paragraph of plaintiffs' Complaint, pleaded in the alternative and without incorporating prior paragraphs of Count VIII, alleges, "Defendant . . . should have known its actions described in Count I through Count VII would be accepted and agreed [to] by Plaintiffs as they were Defendant's employees and that the withdrawing [of its] promises would cause emotional distress and a mental injury medically diagnosable."  Id. at 8-9, ¶ 4.

The Court finds that plaintiffs' factual allegations are insufficient under the Missouri Supreme Court's standard in Bass to allege that defendant should have realized its conduct involved an unreasonable risk of causing distress, and that the emotional distress plaintiffs suffered was both medically diagnosable and of sufficient severity so as to be medically significant.  Liberally construing plaintiffs' allegations in their favor, plaintiffs allege they suffered depression that was medically diagnosable.  There are no facts from which it can be inferred, however, that any of the

plaintiffs' alleged depression is of such severity as to be "medically significant." Such an allegation is a necessary element of a negligent infliction of emotional distress claim. <u>Bass</u>, 646 S.W.2d at 772-73. As a result, the Complaint fails to state a claim for negligent infliction of emotional distress.

Plaintiffs' reliance on the Missouri Court of Appeals' <u>Boes</u> decision is misplaced and misleading. <u>Boes</u> discusses intentional, not negligent, infliction of emotional distress, and states only that the tort of IIED is typically invoked where there is a preexisting legal relationship between the parties, such as a employer-employee relationship. 768 S.W.2d at 207-08. <u>Boes</u> did not involve an employer-employee relationship, and does not state that "[e]motional distress can be implied where there is [an] employer and employee relationship" as asserted by the plaintiffs.

Defendant's motion to dismiss plaintiffs' claims for negligent infliction of emotional distress in Count VIII should therefore be granted.

**Conclusion**

For the foregoing reasons, the Court will grant defendant's motion to dismiss Counts I, II, IV, V, and VIII, deny the motion to dismiss as moot as to Count VII, and deny the motion to dismiss as to Counts III and VI. Remaining in this case are plaintiffs' claims for negligent misrepresentation in Counts III and VI, and the fifteen plaintiffs' age discrimination claims under the Missouri Human Rights Act in Count VII.

Accordingly,

**IT IS HEREBY ORDERED** that the Memorandum and Order of August 9, 2012 is **vacated**. [Doc. 68]

**IT IS FURTHER ORDERED** that defendant's amended motion to dismiss is **GRANTED in part**, **DENIED in part** as moot, and **DENIED in part**; the motion is **GRANTED** as to Counts

I, II, IV, V and VIII, **DENIED as moot** as to Count VII, and **DENIED** as to Counts III and VI.

[Doc. 43]

 An appropriate order of partial dismissal will accompany this Memorandum and Order.


            _____
            **CHARLES A. SHAW**
            **UNITED STATES DISTRICT JUDGE**

Dated this  9th  day of August, 2012.