# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| DIANE FRANKLIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-307 CAS |
| | ) | |
| PINNACLE ENTERTAINMENT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Pinnacle Entertainment, Inc.'s ("Pinnacle") motion for sanctions under Rule 11(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs have responded to the motion and it is fully briefed. For the following reasons, the Court will grant the motion and impose monetary and non-monetary sanctions against plaintiffs' counsel, Mr. Thomas Carter, and require the filing of an amended complaint.

**Background**

This case was originally filed in the Circuit Court for the City of St. Louis, State of Missouri, on November 18, 2011, by sixty-seven plaintiffs asserting state law claims for breach of contract, employment discrimination in violation of the Missouri Human Rights Act, Mo. Rev. Stat. §§ 213.010, et seq., and negligent and/or intentional infliction of emotional distress. The case arises out of the plaintiffs' layoff from employment at the now-closed President Casino. Pinnacle removed the case to this Court on February 17, 2012, on the basis of diversity of citizenship, 28 U.S.C. §§ 1332(a) and 1441.

Plaintiffs moved to remand on the basis that complete diversity of citizenship did not exist because one plaintiff, Michael Holl, shared Nevada citizenship with Pinnacle. By Order dated March 16, 2012, the Court directed plaintiffs to refile their motion to remand because of serious

filing error.[1]  The Order stated in part that while plaintiffs' motion to remand was based on the alleged nondiverse citizenship of plaintiff "Michael Holl," there was no plaintiff named "Michael Holl" listed in the petition.  The Court stated that if this was a typographical error, it should be corrected prior to refiling the motion to remand.  See Order of March 16, 2012 at 1-2 (Doc. 22). Plaintiffs refiled their motion to remand and continued to refer to plaintiff Michael Holl, but did not seek leave to amend their petition to correct the misnomer.  Pinnacle's opposition to the motion to remand stated that Michael Holl was not a party to the suit, but that Michael Hall and Michael Hull were parties.  Pinnacle asserted that it had never employed anyone named Michael Hall or Michael Hull at the President Casino, and provided the affidavit of casino controller Paula Reily to support its assertion.  Plaintiffs replied that they had amended their petition by interlineation in state court before Pinnacle was served with process, to change the name of plaintiff Michael Hull to Michael Holl.[2]

Before the Court ruled on the motion to remand, plaintiffs sought and were granted leave to file an amended complaint that modified some of their claims, added counts for intentional and

---

[1] "Plaintiffs separately filed the three pages of a single document as three separate documents. Plaintiffs filed each page upside down, and in a font so small it can barely be read."  Order of Mar. 16, 2012 at 1.

[2] The amendment by interlineation was not included in the state court record on removal, and was made known to the Court and apparently to Pinnacle's counsel only when Mr. Carter filed it as an exhibit to the reply.  As a result, the name Michael Hull rather than Michael Holl appeared on the Court's electronic docket sheet.

negligent misrepresentation, and added four plaintiffs.[3]  In reviewing plaintiffs' motion to remand, the Court stated:

> [A]t the time plaintiffs filed the motion to remand, there was no plaintiff named "Michael Holl" listed in the caption of the removed Petition, but there was a plaintiff named Michael Hull.  Although plaintiffs contend they amended their Petition by interlineation in state court to change the name of Michael Hull to Michael Holl, defendant disputes this, and the docket sheet in this case listed plaintiff Michael Hull, not Michael Holl, as a party.  In any event, plaintiffs omitted plaintiff Michael Hull from the caption of the Amended Petition and added plaintiff Michael Holl.

Order Concerning Removal at 2, n.2 (Doc. 47).  The Court also stated, "Neither the removed Petition nor the amended complaint can be described as a model of pleading clarity.  Both are vague and imprecise, and riddled with typographical and grammatical errors."  Id. at 5, n.4.

The Court determined that the allegations of the removed Petition and Pinnacle's Notice of Removal were insufficient to establish complete diversity of citizenship.  The original Petition did not contain specific allegations as to the parties' citizenship, but incorporated by reference an undated exhibit entitled "EEOC - Client Information" (the "Exhibit") that listed most, but not all, of the plaintiffs' names and addresses.  The Court noted that several of the plaintiffs' names as shown on the Petition did not correspond exactly with the names listed on the Exhibit, and as a result the citizenship of some plaintiffs was unclear.[4]

---

[3]Plaintiffs titled their amended complaint "First Amended Petition" [Doc. 36], but the pleading was docketed as an Amended Complaint because under the Federal Rules of Civil Procedure, a complaint is the initial pleading that commences a civil action.  See Rule 7(a), Fed. R. Civ. P.  Although this case was originally filed in state court, Rule 81(c)(1) provides that the Federal Rules apply to civil actions removed to federal district court and plaintiffs should have titled their pleading an amended complaint.  The Court will refer to the "First Amended Petition" in this Memorandum and Order, however, to avoid any confusion in the record.

[4]The Order specifically identified the discrepancies in the names, stating:

> For example, there is a plaintiff named Demarcus Arnold and a person named Demarus Arnold listed on the Exhibit.  Similarly, there are plaintiffs named Tanya Armstrong-Gines, Dierder Arnold, Stephanie Hamiel, Martisa Holmon, Darrel Mueth, Antronette Parker, Perez Rayford, and Lizett Simmons, and persons listed on

The Court concluded,

> While these discrepancies [in the plaintiffs' names] may be the result of typographical errors, defendant must establish that the plaintiffs listed in the Petition are the same persons listed on the Exhibit, or otherwise establish the citizenship of those plaintiffs.  In addition, there are three plaintiffs listed in the caption of the removed Petition whose names are not listed on the Exhibit – Linda Schreck, Linda Cotton, and Raymond Wood – and there are no allegations before the Court concerning these plaintiffs' citizenship.  Defendant must establish the citizenship of each of these plaintiffs.

Order Concerning Removal at 7-8.

The Court stated that it was satisfied former plaintiff Michael Hull was no longer a party to the action, because plaintiffs omitted Hull's name from the caption of the First Amended Petition and replaced it with the name of plaintiff Michael Holl, and because defendant had filed an affidavit stating that no one named Michael Hull ever worked for it.  As a result, the Court stated that Pinnacle was not required to attempt to establish Hull's citizenship.  Id. at 8, n.8.

The Court also noted that several of the plaintiffs' names listed in the caption of the original Petition were changed in the caption of the First Amended Petition.  Specifically, plaintiff Mark Hughes' name was changed to Michael Hughes, plaintiff Michael Hull's name was changed to Michael Holl; and plaintiff Raymond Wood's name was changed to Raymond Woods.  Id. at 9.  Pinnacle was ordered to establish the citizenship of each of these plaintiffs at the time of filing and the time of removal.  Id.

Pinnacle filed its Response to the Order Concerning Removal on May 21, 2012, and provided detailed proof of the citizenship of each plaintiff except for Michael Hall, Michael Hull and Michael Hughes.  Pinnacle's Response stated that it never employed individuals named Michael

---

the Exhibit named Tanya Armstrong-Gaines, Dieder Arnold, Stephanie Hammiel, Martia Holman, Darrell Mueth, Antoinette Parker, Perex Rayford, and Lizzett M. Simmons.

Order Concerning Removal at 7, n.7.

Hall, Michael Hull and Michael Hughes at the President Casino, and plaintiffs have not contradicted this statement. The Court ultimately determined that complete diversity of citizenship existed and that diversity jurisdiction was proper. <u>See</u> Mem. and Order of June 7, 2012 (Doc. 63).

By letter dated June 21, 2012, Pinnacle informed plaintiffs' counsel that it believed plaintiffs' pleadings contained misrepresentations of fact "that a number of the listed plaintiffs are proper plaintiffs in this lawsuit," and as such were subject to sanctions under Rule 11(b). Pinnacle asked plaintiffs to withdraw the misrepresentations and request leave of Court to correct them, identifying the misrepresentations as follows:

> 1. Please clarify and/or acknowledge the proper spelling of each plaintiff's name. A discussion of the spelling errors and how Pinnacle resolved each error is found in the Affidavits of Paula Reily submitted as attachments to Defendant's response to the Court's Order Concerning Removal.
>
> 2. Pinnacle has never employed an individual named "Michael Hall" at the President Casino, and can find no legal basis for his inclusion in this lawsuit.
>
> 3. Pinnacle has never employed an individual named "Michael Hughes" at the President Casino, and can find no legal basis for his inclusion in this lawsuit. Although Pinnacle has employed an individual named "Michael Hughes" at other Pinnacle locations, it is my understanding that the claims asserted in this lawsuit arose under the employment relationship between the plaintiffs and the President Casino.
>
> 4. Pinnacle has never employed an individual named "Michael Hull" at the President Casino, and can find no legal basis for his inclusion in this lawsuit.

Letter from James N. Foster, Jr. to Thomas Carter, Esq. (June 21, 2012) at 1-2, Ex. 1 to Pinnacle's Mot. for Sanctions (Doc. 74). The letter from Mr. Foster to Mr. Carter also stated in part,

> The immense amount of time we have spent attempting to understand and navigate your pleadings, motions and responses in this matter lead us to believe you may not have all of the information you need from each and every plaintiff. Defendant further reminds you of your absolute obligation to conduct a reasonable inquiry <u>prior</u> to filing any pleadings and of your obligation to refrain from filing amended pleadings solely for the purpose of causing unnecessary delay in this litigation. Rule 11(b), Federal Rules of Civil Procedure.

Id. at 2.

Mr. Carter responded to the June 21, 2012 letter as follows:

> We are in receipt of your letter dated June 21st. It is clear by now the [sic] we are suing on behalf [of] Michael Holl. See, also, the amendment by interrelation [sic] and the amended petition. However we can not [sic] argue with you about Michael Hughes. When we got your affidavit we sent a letter to Mr. Hughes. No answer. We will send another. We will advise.
>
> Thank [sic] in advance for your cooperation.

Letter from Thomas Carter, II to James Foster Jr. (July 2, 2012), Ex. 5 to Pinnacle's Mot. for Sanctions.

Pinnacle was unsatisfied with this response, and on August 2, 2012 its counsel sent Mr. Carter another letter informing him in writing of the "known misrepresentations" it had identified, and of its intention to seek sanctions for the misrepresentations by serving a motion for sanctions on counsel by certified mail. See letter from James N. Foster, Jr. to Thomas Carter, Esq. (Aug. 2, 2012) at 1-2, Ex. 2 to Pinnacle's Mot. for Sanctions.[5]

Mr. Carter responded as follows:

> This letter is a reply to your [sic] dated August 2nd. For the record, we respond to your letter dated June 21th [sic] in a similar manner.
>
> You have asked us to amend to make it clear if the Plaintiff's name is Michael Hall, Hull or Holl. Plaintiffs' Amended Petition only lists the name of Michael Holl. We also filed an amendment by interlineations [sic] in state court to reflect the correction from Hull to Holl.
>
> You have asked also to verify [if] Michael Hughes is an employee. We stated earlier to your inquiry that we would contact Mr. Hughes for verification. Our letters to him were not returned. Therefore we will agree to drop him from the lawsuit.
>
> Hopefully this letter will satisfy your concerns.

---

[5]This letter and the accompanying motion for sanctions constitute Pinnacle's compliance with Rule 11(c)(2)'s "safe harbor" provision.

Letter from Thomas Carter, II to James Foster Jr. (Aug. 4, 2012), Ex. 6 to Pinnacle's Mot. for Sanctions.

Pinnacle's counsel replied to Mr. Carter by letter of August 8, 2012. The letter states that while Mr. Carter may have informed it of the status of plaintiff Michael Hughes, he did not satisfy Pinnacle's request that plaintiffs properly inform the Court that Michael Hughes, Michael Hall and Michael Hull are not parties to this action. Pinnacle also informed Mr. Carter that the state court filing referenced in his August 4, 2012 letter failed to ensure that Michael Hall and Michael Hull were effectively removed from the federal pleadings, and pointed out that plaintiffs' First Amended Petition (Doc. 36) included Michael Hall and Michael Hull in the caption as plaintiffs, and that those individuals appear as plaintiffs on the Court's electronic docket. Pinnacle stated, "Thus, we are merely asking that the Court is properly notified that Plaintiffs Michael Hall, Michael Hull and Michael Hughes are not Plaintiffs in this lawsuit as we move forward." Letter from James N. Foster, Jr. to Thomas Carter, Esq. (Aug. 8, 2012), Ex. 3 to Pinnacle's Mot. for Sanctions.

Pinnacle's August 8, 2012 letter to Mr. Carter also states that plaintiffs failed to respond to its request to clarify and correct the numerous spelling mistakes contained in the caption of the case, noting that approximately fourteen plaintiffs' names were misspelled, and "our request for correction as to the spelling errors is simply to clarify the correct names of the Plaintiffs as we move forward with the lawsuit." Id. Pinnacle's letter closed by asking Mr. Carter to resolve the issues surrounding the improper plaintiffs and the spelling errors by August 9, 2012. On August 14, 2012, Pinnacle's counsel faxed to Mr. Carter the affidavit of Paula Reily, former casino controller at the President Casino, which detailed the misnomers and claimed misrepresentations with respect to the plaintiffs in this action. See Ex. 4 to Pinnacle's Mot. for Sanctions.

Following this correspondence, Mr. Carter made no effort to correct or amend the complaint, nor did he file a motion to dismiss Michael Hughes or Michael Hall from the suit. Meanwhile, by Memorandum and Order of August 9, 2012 (Doc. 70), the Court granted Pinnacle's motion to dismiss plaintiffs' claims in the First Amended Petition for breach of oral contract (Counts I and IV), fraudulent misrepresentation (Counts II and V), and negligent and intentional infliction of emotional distress (Count VIII).

**Motion for Sanctions**

Pinnacle filed the instant motion for sanctions on August 31, 2012. In the motion, Pinnacle states that despite being asked to and provided the opportunity to do so, plaintiffs and their counsel have failed to correct known misrepresentations and spelling errors contained in the pleadings, in violation of Rule 11(b)(3), Fed. R. Civ. P. Rule 11(b)(3) provides that by signing a document filed with the Court, an attorney represents that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Attorneys are required to "conduct a reasonable inquiry of the factual and legal basis for a claim before filing." Coonts v. Potts, 316 F.3d 745, 753 (8th Cir. 2003).

Pinnacle contends that plaintiffs' First Amended Petition contains factual allegations lacking evidentiary support, and plaintiffs and their counsel have continued to assert those claims even when presented with undisputed evidence proving the allegations are false, in violation of Rule 11(b)(3). Pinnacle identifies the following factual allegations contained in the First Amended Petition as lacking evidentiary support both now and at the time they were filed:

• Named plaintiff Michael Hughes was never employed at the President Casino.

• Named plaintiff Michael Holl was, at various times, referred to as "Michael Hall" and "Michael Hull." Despite plaintiffs' attempts to correct the misnomers in state court, both "Michael Hall" and "Michael Hull" continue to appear in various court filings and case headers.

Pinnacle states there is no evidence that Michael Hughes, Michael Hall or Michael Hull were ever employed by the President Casino, and the evidence is to the contrary as Mr. Carter stated in his letters that subsequent attempts to contact Michael Hughes were unsuccessful. Pinnacle contends that because the allegations against it on behalf of plaintiff Michael Hughes lacked evidentiary support at the time they were made, plaintiffs' counsel violated Rule 11 when he filed the lawsuit in state court and the First Amended Petition in this Court, as it is clear he did not conduct a "reasonable inquiry" into the factual and legal basis for plaintiff Michael Hughes' claims against Pinnacle before filing either the original Petition or the First Amended Petition.[6]

Pinnacle also asserts that this failure to investigate the factual and legal basis for Michael Hughes' claims, in addition to the numerous misnomers and spelling errors contained in the petitions, suggests that little, if any, investigation was conducted into the legitimacy of the claims of any plaintiff prior to the filing of this lawsuit. Pinnacle asserts that plaintiffs' refusal to correct the obvious mistakes in the First Amended Petition, after the errors were explicitly detailed in Defendant's Response to the Court's Order Regarding Removal, is clearly in violation of Rule 11(b)(3), and the initial error is compounded by Mr. Carter's refusal to dismiss, withdraw or amend the First Amended Petition after he was informed that some of the factual allegations lacked evidentiary support.

---

[6]Although Pinnacle refers to the original and amended petitions, the Court's sanctions analysis is limited to the First Amended Petition (Doc. 36). "Rule 11 does not grant a district court authority to impose sanctions based solely upon a complaint filed in state court which is thereafter removed to federal court." Davis v. MCI Commc'ns Servs. Inc., 421 F.Supp.2d 1178, 1182 (E.D. Mo. 2006) (cited cases omitted). "There is, however, a continuing duty after removal to not maintain frivolous or non-meritorious claims." Id.

Pinnacle asserts that because of plaintiffs' failure to correct the errors in its First Amended Petition, it has been prejudiced in its ability to effectively prepare discovery. Pinnacle also states that if plaintiffs are not required to correct their errors, the case will necessarily be made more complicated, as Pinnacle will be required to alert the Court to each and every instance when it refers to a plaintiff's name by a spelling different that the spelling used in the pleadings, which will cause additional filings and delays in this action.

Pinnacle asks the Court to sanction plaintiffs as follows: (1) strike plaintiffs' pleadings to correct all spelling errors; (2) dismiss with prejudice claims related to any plaintiff which Pinnacle has asserted was never employed by the President Casino, i.e., Michael Hughes, Michael Hull and Michael Hall; (3) award Pinnacle its attorneys' fees and costs in preparing the motion for sanctions; and (4) provide such additional relief as the Court deems just.

Plaintiffs respond that Pinnacle's motion should be denied because "there is no basis for sanctions where Plaintiffs have responded to Defendant's inquiry orally and in writing conceding to many of Defendant's concerns but was [sic] undecided how to remedy these concerns i.e. federal court does not allow for amendment by interlineations [sic]." Pls.' Resp. at 1. Mr. Carter states that he filed an amendment by interlineation to the petition in state court "indicating the correct name for [plaintiff] Mr. Holl was Holl, not Hall or Hull." Mr. Carter also states that in a letter to Pinnacle, he "conceded withdrawing [plaintiff] Mr. Hughes's name may be in order." Id. Mr. Carter contends that the "remainder of the Plaintiff's [sic] names, although misspelled, was [sic] not in issue," although plaintiffs "will accept and agreed to the name changes" as suggested by Pinnacle. Id. at 1-2. Plaintiffs' response concludes, "As stated earlier, Mr. Holl's name have [sic] been corrected already. If Defendant's name correction is not correct, Plaintiffs request leave to respond accordingly." Id. at 2.

Pinnacle replies that although plaintiffs concede the improperly joined and misnamed plaintiffs in the First Amended Petition, they make no attempt to rectify those errors and merely argue that no sanctions are warranted as a result of their concession. Pinnacle disagrees, asserting that "[m]aintaining a lawsuit in federal court requires basic formalities. Plaintiffs' promises, offers to withdraw, and agreement about spelling errors and improper parties does not, in fact, correct the errors contained in the First Amended Petition." Pinnacle Reply at 1. Pinnacle states that although multiple avenues to correct the errors were and still are available to plaintiffs, including seeking leave to file an amended complaint for the limited purpose of correcting the errors, plaintiffs simply chose to concede the errors while making no effort to correct them.[7] Pinnacle concludes,

> Based on their Response, it appears that Plaintiffs assume Defendant and/or the Court will simply accept their Response to be adequate, make the necessary corrections for Plaintiffs and move on with the lawsuit. However, such responsibility falls to Plaintiffs. Plaintiffs treat Defendant's requests as trivial and petty and, in the context of a typical lawsuit, a similar Motion for Sanctions may be overreaching. But in the context of *this* lawsuit, in which Defendant's counsel has spent countless hours attempting to piece together, understand and respond to ambiguous pleadings, motions and responses by Plaintiffs in an effort to properly defend this lawsuit, it is more than reasonable to ask Plaintiffs to step up and put forth minimal effort to clarifying and correct[ing] their poorly drafted pleadings. Defendant's Motion for Sanctions is both reasonable and appropriate in light of Plaintiffs['] attempts to evade responsibility for this lawsuit.

Pinnacle's Reply at 3-4.

---

[7]Pinnacle states that its counsel spent approximately 19.75 hours in reviewing and confirming errors in the pleadings, corresponding with plaintiffs' counsel by letter, facsimile and telephone, providing multiple copies of documents specifically detailing the errors for plaintiffs' counsel, and drafting its motion for sanctions and memorandum in support. Pinnacles states that at the rate of $195 per hour, it incurred attorneys' fees and costs of $3,851.25. Plaintiffs have not contested the amount or reasonableness of Pinnacle's claimed attorneys' fees.

**Discussion**

A.  Rule 11 Standards

Rule 11(b) of the Federal Rules of Civil Procedure concerns representations made to the Court and provides as follows:

> **(b) Representations to the Court**.  By presenting to the court a pleading, written motion or other paper –whether by signing, filing, submitting, or later advocating it–an attorney or unrepresented person certifies that to the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or increase in the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or; if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a belief or lack of information.

As stated above, Pinnacle asserts that plaintiffs' First Amended Petition violates subsection (b)(3) of Rule 11.  Rule 11 places an affirmative duty on attorneys, as it "requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing." Coonts, 316 F.3d at 753.  A violation of Rule 11(b)(3) occurs when a pleading contains allegations or factual contentions that lack evidentiary support. Clark v. United Parcel Serv., Inc., 460 F.3d 1004, 1008 (8th Cir. 2006).  A Rule 11 sanction may be properly imposed if a claim did not have any basis in fact, if the party failed to present any facts supporting the claim, or if the claim was based on immaterial factual allegations. See MHC Investment Co. v. Racom Corp., 323 F.3d 620, 625 (8th Cir. 2003).

The ability to plead contentions based on information and belief does not relieve attorneys from the obligation to conduct an appropriate investigation into the facts that is reasonable under the circumstances:

> **[I]t is not a license to join parties, make claims, or present defenses without any factual basis or justification.** Moreover, if evidentiary support is not obtained after a reasonable opportunity for further investigation or discovery, the party has a duty under the rule not to persist with that contention. Subdivision (b) does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses.

Id. (emphasis added). Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." Fed. R. Civ. P. advisory committee's notes to 1993 Amendments.

The determination whether to impose Rule 11 sanctions requires an examination of the underlying factual and legal claims, as well as the appropriateness of the sanction to be imposed. Cf. MHC Inv. Co., 323 F.3d at 624 (stating that an appellate court must undertake such an examination in order to review the district court's imposition of Rule 11 sanctions). This is because determinations as to whether an attorney's conduct has violated Rule 11 often involve "fact-intensive, close calls." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 404 (1990). "[W]hether a violation has occurred is a matter for the court to determine, and this determination involves matters of judgment and degree. The issue is whether the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading." O'Connell v. Champion Int'l Corp., 812 F.2d 393, 394 (8th Cir. 1987).

Rule 11 establishes an objective standard of reasonable conduct of attorneys and litigants. Norsyn, Inc. v. Desai, 351 F.3d 825, 831 (8th Cir. 2003); see also O'Connell, 812 F.2d at 394 (the appropriate standard is one of objective reasonableness, not subjective bad faith). "[T]he subjective

*beliefs* of a person who signed or advocated a document are irrelevant in determining whether the certification requirements of the rule have been violated." 2 James Wm. Moore, et al., Moore's Federal Practice § 11.11[4] (3d ed. 2012). "Inexperienced or incompetent attorneys are not held to a lesser standard under Rule 11." Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991) (cited case omitted).

The Eleventh Circuit has described the analysis a district court should undertake to determine if an attorney conducted a reasonable investigation into the factual basis of claims, as required by Rule 11(b):

> A factual claim is frivolous if no reasonably competent attorney could conclude that it has a reasonable evidentiary basis. Thus, where no evidence or only "patently frivolous" evidence is offered to support factual contentions, sanctions can be imposed. If, however, the evidence supporting the claim is reasonable, but simply "weak" or "self-serving," sanctions cannot be imposed.
>
> Once a court concludes that either the factual or legal contentions are frivolous, the question becomes whether the attorney should have known they were frivolous. We ask what was known or reasonably knowable when the paper was "present[ed] to the court." Fed. R. Civ. P. 11(b). Again, measured objectively, if a reasonable investigation would have revealed the error to a reasonably competent attorney, then sanctions can be imposed; if not, then sanctions cannot be imposed. The reasonableness of the inquiry turns on the totality of the circumstances, including, for example, the time available for investigation and whether the attorney had to rely on the client, another member of the bar, or others.

Thompson v. RelationServe Media, Inc., 610 F.3d 628, 665 (11th Cir. 2010). The Court finds this analysis is properly applied to determine if plaintiffs' counsel conducted a reasonable investigation into the joinder of plaintiffs in this case.

B. Rule 11 Violations in this Case

The Court first examines whether the challenged aspects of plaintiffs' pleading lack factual support. The Court finds that plaintiffs' First Amended Petition lacks factual support for the joinder of plaintiffs Michael Hughes and Michael Hall, as it is undisputed these individuals never worked

for Pinnacle at the President Casino. Thus, there is no evidentiary basis for their inclusion in the First Amended Petition.

With respect to former plaintiff Michael Hull, however, Pinnacle's motion for sanctions is without merit. The record shows that plaintiffs dismissed Michael Hull as a plaintiff when they filed the First Amended Petition, because the pleading does not include Michael Hull's name in the caption, and substitutes plaintiff Michael Holl instead. In addition, the Court's docket text order of March 30, 2012 granted leave for the First Amended Petition to be filed and directed the Clerk of the Court to "modify the record to correct the spelling of plaintiff Michael Hull's name, to the correct spelling shown on the First Amended Petition, 'Michael Holl.'" The electronic docket sheet reflects that Michael Hull was terminated as a plaintiff on March 30, 2012. Finally, the Order Concerning Removal of April 16, 2012 noted that "plaintiffs omitted plaintiff Michael Hull from the caption of the Amended Petition and added plaintiff Michael Holl," and stated, "As a result, the Court is satisfied that Michael Hull is not a party to this action and defendant need not attempt to establish his citizenship." Order Concerning Removal at 2, n.2, & 8, n.8.

The fact that Michael Hull's name still appears in the listing of plaintiffs in entries on the docket sheet after the First Amended Petition was filed should not be considered as a continued assertion of claims on Hull's behalf. Rather, it is a function of the CM/ECF electronic filing system and the actions of the filing attorney in selecting the filers of a given document. When a document is filed electronically, the potential filing parties are listed in alphabetical order for selection by the filing attorney, and the list includes terminated parties. For example, the Joint Proposed Scheduling Plan filed by Pinnacle's attorney Mr. Foster on July 2, 2012 (Doc. 67) includes Hull in the list of filing plaintiffs. This did not occur because Hull was still a plaintiff on that date, but rather because Mr. Foster affirmatively selected Hull as a filing party. To avoid this in the future, the filing

attorney should take care to select only the active plaintiffs, and not those who have been terminated from the case

The Court next examines whether Mr. Carter knew or should have known that there was no evidentiary basis to include plaintiffs Hughes and Hall at the time he filed the First Amended Petition. "To constitute a reasonable inquiry, the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis." Coonts, 316 F.3d at 753. "Whether the attorney's inquiry is reasonable may depend on factors such as whether counsel had to rely on a client for factual information, or whether the attorney depended on forwarding counsel or another member of the bar. The District Court must determine 'whether a reasonable and competent attorney would believe in the merit of an argument.'" Id. (internal citation and quoted case omitted).

Here, the Court finds that Mr. Carter did not make a prefiling investigation sufficient to give a reasonable and competent attorney an objectively reasonable basis to believe that Michael Hughes and Michael Hall should have been joined as plaintiffs in the First Amended Petition. At the very minimum, Mr. Carter was obligated to ascertain that each plaintiff had actually worked for Pinnacle at the President Casino. A reasonable and competent attorney would not believe that persons who never worked at the President Casino could join as plaintiffs in this case, and this information was clearly knowable at the time the First Amended Petition was filed.

The only evidence concerning Mr. Carter's investigation into plaintiff Michael Hughes' standing to join in this action is the following unverified assertion in his opposition to the motion for sanctions: "Plaintiffs were not aware Mr. Hughes was not an employee. A person with this name attended a town hall meeting attesting to employment." Pls.' Resp. at 1.[8] This does not

---

[8]This assertion causes the Court some concern, because Mr. Carter does not state that Michael Hughes consented to joining in this case as a plaintiff. The vague assertion that a person

constitute a reasonable investigation into Michael Hughes' standing to join as a plaintiff in this case. A reasonable investigation would have revealed to a reasonably competent attorney that Michael Hughes never worked for Pinnacle at the President Casino, and therefore had no basis to assert a claim against it in this action. The Court finds that Mr. Carter should have known, had he conducted a reasonable investigation prior to filing the First Amended Petition, that no factual basis existed to join Hughes as a plaintiff.[9]

Mr. Carter's response does not offer any information about his investigation with respect to plaintiff Michael Hall. Instead, Mr. Carter continues to inaccurately assert that Michael Hall is not a plaintiff in the First Amended Petition when, in fact, his name is listed in the case caption.[10] Mr. Carter asserts that he dismissed plaintiff Hall from the suit while it was still in state court by filing an amendment by interlineation. Whether or not that action was effective, Mr. Carter joined Hall as a plaintiff in this case when he listed Hall's name in the caption of the First Amended Petition filed subsequent to removal. At that time, there was no evidentiary basis to support Hall's inclusion in the case and Mr. Carter knew it, based on his conduct in filing the amendment by interlineation in state court and his statements in the letters exchanged with Pinnacle's counsel

_____

named Michael Hughes attended a "town hall meeting" and "attest[ed] to employment" in some unspecified manner is not equivalent to a statement that Hughes engaged Mr. Carter to file a lawsuit on his behalf. The Court also notes that the original Petition listed Hughes as "Mark Hughes," and the name was changed to Michael Hughes in the First Amended Petition. There is no indication why this change was made, but it raises additional questions concerning Mr. Carter's prefiling investigation.

[9]The Court is mindful that "[a]n attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable." Miller v. Bittner, 985 F.2d 935, 939 (8th Cir. 1993) (quoted case and alteration omitted). Here, Mr. Carter does not assert that he was relying on statements from Hughes in filing the First Amended Petition, or even that he had any direct contact with Hughes.

[10]The plaintiffs' names, including that of Michael Hall, appear only in the caption of the First Amended Petition, except for the fifteen plaintiffs who assert Missouri Human Rights Act age discrimination claims in Count VII.

quoted above. The Court finds that by filing the First Amended Petition and including Hall as a plaintiff therein, Mr. Carter knowingly advocated a factually baseless claim.

The Court concludes that a reasonable investigation prior to filing the First Amended Petition would have revealed to a reasonably competent attorney that Michael Hughes and Michael Hall had no factual basis to assert claims against Pinnacle based on employment at the President Casino. Therefore, the Court finds that plaintiffs' counsel Mr. Carter violated Rule 11(b)(3) by joining Hughes and Hall as plaintiffs in the First Amended Complaint.

C. Determinations Regarding Sanctions

When a district court determines that Rule 11(b) has been violated, it 'may,' but is not required to, impose a sanction." 2 Moore's Federal Practice § 11.23[2].[11] The Court must now determine whether sanctions should be imposed here and, if so, what sanctions are appropriate. The Court is mindful that "the primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending." Kirk Capital Corp. v. Bailey, 16 F.3d 1485, 1490 (8th Cir. 1994). Further, a sanction imposed for the violation Rule 11 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(2); see Clark, 460 F.3d at 1011; Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 808 (8th Cir. 2005). A leading federal practice treatise states that courts should select the least severe measure necessary to vindicate Rule 11's primary purpose of deterrence. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1336 (2d ed. Supp. 1996)).

---

[11]The imposition of sanctions was mandatory upon a finding of a violation of Rule 11(b) under the pre-1993 version of Rule 11, but is discretionary under the rule as amended in 1993. MacDraw, Inc. v. CIT Group Equip. Fin. Co., 73 F.3d 1253, 1258 (2d Cir. 1996); see Gordon v. Unifund CCR Partners, 345 F.3d 1028, 1030 (8th Cir. 2003) (district court's decision to impose sanctions is reviewed for abuse of discretion).

The Advisory Committee Notes to the 1993 amendments to Rule 11 offer guidance concerning the types of sanctions available and the factors to be considered by a court in imposing sanctions:

> The court has available a variety of possible sanctions to impose for violations, such as striking the offending paper; issuing an admonition, reprimand, or censure; requiring participation in seminars or other educational programs; ordering a fine payable to the court; referring the matter to disciplinary authorities.... The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations.

Fed. R. Civ. P. 11 advisory committee's notes.

In its motion, Pinnacle did not cite any cases that discuss the imposition of sanctions in circumstances comparable to this case, where an attorney files a complaint that includes plaintiffs whose claims have no factual or legal basis.[12] The Court in independent research has not found any cases directly on point, but Kurkowski v. Volcker, 819 F.2d 201, 203-04 (8th Cir. 1987) is instructive and somewhat analogous. In Kurkowski, the Eighth Circuit agreed with the district court that the pro se plaintiffs' complaint was frivolous, in part because there was absolutely no relationship between the plaintiffs and one of the named defendants, and affirmed a sanction of $5,400 payable to the defendants for their attorneys' fees. District courts in the Eighth Circuit have

---

[12]Sanctions under Rule 11 are not limited to instances in which a pleading as a whole is frivolous, but may be imposed for improper allegations even though at least one non-frivolous claim has been pled, if the attorney has not conducted a reasonable inquiry under the circumstances of the case. See Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362-65 (9th Cir. 1990).

also imposed sanctions against attorneys who violated Rule 11 by failing to adequately investigate whether the plaintiffs' claims had a factual and legal basis against a particular defendant, see Chandler v. Norwest Bank Minn., N.A., 137 F.3d 1053, 1057 (8th Cir. 1998) (affirming this Court's (Judge Perry) imposition of sanctions against plaintiffs' counsel where they could not have conducted a reasonable inquiry necessary to support the plaintiffs' claim against the bank, because the plaintiffs ultimately were unable to produce any evidence the bank was involved in the loan transaction that was the subject of their claims); see also Temple v. WISAP USA in Texas, 152 F.R.D. 591, 600 (D. Neb. 1993) (ordering plaintiff's counsel to pay $15,000 to the aggrieved defendant for failing to make an adequate prefiling investigation into the proper name or corporate status of the defendant prior to filing an amended complaint against the wrong corporation).

Based on these decisions, the Court finds that Rule 11 sanctions are properly imposed in this case. The factors relevant to the Court's decision to impose sanctions are among those listed in the advisory committee's note above. Mr. Carter clearly failed to conduct an adequate prefiling investigation where he joined two persons as plaintiffs in this action who never worked for Pinnacle. Mr. Carter then failed in his duty to withdraw or otherwise seek to correct the First Amended Petition after Pinnacle called the potential Rule 11 violations to his attention. Mr. Carter's assertion that he did not know how to correct the problems in the First Amended Petition rings hollow, because he filed one amended complaint in this Court and therefore obviously could have sought leave to file another. Mr. Carter's improper joinder of two plaintiffs and the misnomer of numerous other plaintiffs has infected the entire First Amended Petition, and cannot be isolated to one or two claims contained therein. The lack of care that Mr. Carter demonstrated in filing the First Amended Petition is part of a pattern that exists in most of the documents he has filed in this case, which are

riddled with egregious typographical errors and basic grammatical errors such as a lack of subject-verb agreement.

In addition, Mr. Carter appears to be unable or unwilling to comply with the Federal Rules of Civil Procedure and the Court's Local Rules, including the Administrative Procedures for Case Management/Electronic Case Filing (CM/ECF), as evidenced by the Court's multiple orders that identified Mr. Carter's filing errors and omissions and, in many instances, ordered various documents stricken from the record for filing error. See Orders of March 13, 2012 (Doc. 16), March 16, 2012 (Doc. 22), March 27, 2012 (Doc. 30), April 25, 2012 (Doc. 49), and September 5, 2012 (Doc. 76), and docket text orders of March 13, 2012 (docket entry 13), March 27, 2012 (docket entry 29), March 28, 2012 (docket entry 32), and September 3, 2012 (docket entry 75),

Mr. Carter's improper joinder of plaintiffs and misnaming of other plaintiffs has had a marked effect on the litigation process in this matter. A case involving seventy plaintiffs asserting multiple claims will necessarily be more complicated than the typical case. Here, however, because of Mr. Carter's errors and vague and imprecise assertions in the First Amended Petition, the Court was required to spend an unusual amount of time to determine whether diversity jurisdiction existed, and to ascertain who the plaintiffs are and what causes of action they are asserting. Plaintiffs' unsuccessful motion to remand was based solely on the citizenship of Michael Holl, one of the plaintiffs whose name has been a source of confusion, and Pinnacle's task in establishing the various plaintiffs' citizenship for purposes of diversity jurisdiction was made unnecessarily burdensome because of the misnomers. Mr. Carter is an attorney and as such must be deemed to know the importance of accuracy in the pleadings and other documents he files with the Court, and of complying with Court rules and procedures. For these reasons, and because the Court finds there is a need to deter Mr. Carter from continuing to engage in the careless and haphazard form of

practice he has demonstrated in federal court throughout the progress of this case, sanctions are appropriate.

The Court must now determine the type of sanction that is the least severe necessary to deter Mr. Carter from future conduct of this type, and to correct the record in this case. In the exercise of its discretion, the Court finds that monetary and non-monetary sanctions are proper under Rule 11. Mr. Carter will be ordered to pay the sum of $1,925 to Pinnacle's counsel, to compensate Pinnacle for half of the attorneys' fees it was required to expend as a direct result of his Rule 11(b)(3) violations. The Court imposes the monetary sanction on Mr. Carter, rather than the plaintiffs, because as the filing attorney he had the duty to make a reasonable investigation into the plaintiffs' standing to bring this action. There is no indication the individual plaintiffs had any control over Mr. Carter's baseless joinder of two plaintiffs in the First Amended Petition, or his misnomer of fourteen other plaintiffs. Further, it was Mr. Carter who had the duty and opportunity to withdraw or seek to correct the improperly joined plaintiffs and misnomers after the potential Rule 11 violations were brought to his attention by Pinnacle, but instead he chose to exhibit an attitude of unconcern and took no action. Mr. Carter also took no action to correct these errors after they were pointed out early on in this litigation by the Court's orders discussed above.

The Court will also impose the following non-monetary sanction on Mr. Carter. Mr. Carter will be ordered to attend a Continuing Legal Education program or seminar on the topic of federal practice and procedure, such as the Federal Practice Seminar to be held in St. Louis on April 5, 2013, to assist him in making needed improvements in his practice before this Court.

The Court will also strike the First Amended Petition for filing error and order plaintiffs to file a pleading titled "Second Amended Complaint" that will omit the names of Michael Hughes and Michael Hall, and correctly spell the names of each remaining plaintiff as those names are shown

in the affidavit of Paula Reily.  The Court is aware that the Rule 11 advisory committee note states the Rule "does not require a formal amendment to pleadings for which evidentiary support is not obtained, but rather calls upon a litigant not thereafter to advocate such claims or defenses." Advisory committee note, 1993 Amendments.  The Court finds that amendment is required here, because the First Amended Petition does not contain claims that lack evidentiary support, but rather joins plaintiffs who lack standing and misnames multiple plaintiffs.  These errors cannot be corrected by a mere lack of further advocacy.  As Pinnacle has observed, Mr. Carter's concession of the errors in the First Amended Petition does not correct the record in this case, because two persons who have no connection to the President Casino are still active plaintiffs, and fourteen other plaintiffs remain misnamed.

The Second Amended Complaint shall not include any claims that were previously dismissed by the Court.  Finally, Mr. Carter shall carefully proofread the Second Amended Complaint prior to filing in order to correct the grammatical and typographical errors that exist in the First Amended Petition.

**Conclusion**

For the foregoing reasons, the Court will grant Pinnacle's motion for sanctions based on plaintiffs' counsel's violation of Rule 11(b)(3), Fed. R. Civ. P., and impose the monetary and non-monetary sanctions discussed above.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Pinnacle Entertainment, Inc.'s Motion for Sanctions is **GRANTED**.  [Doc. 73]

**IT IS FURTHER ORDERED** that attorney Thomas Carter, II, shall pay the sum of One Thousand Nine Hundred Twenty-Five Dollars ($1,925.00) to the firm McMahon Berger, P.C.,

within thirty (30) days of the date of this Order, and shall file a written Notice in this case stating that he has done so.

**IT IS FURTHER ORDERED** that attorney Thomas Carter, II, shall attend a Continuing Legal Education program or seminar on the topic of federal practice and procedure, no later than April 30, 2013, and shall file an affidavit with the Court describing his compliance with this Order.

**IT IS FURTHER ORDERED** that the First Amended Petition is **STRICKEN** from the record. [Doc. 36]

**IT IS FURTHER ORDERED** that plaintiffs shall file a pleading titled "Second Amended Complaint" within fourteen (14) days of the date of this Order, that shall (1) omit the names of plaintiffs Michael Hughes and Michael Hall; (2) use the correct spelling of each plaintiff's name, so that all of the plaintiffs' names are the same as shown in the Reily Affidavit; and (3) correct the typographical and grammatical errors that appear throughout the First Amended Petition.

**IT IS FURTHER ORDERED** that the Second Amended Complaint shall not assert or include any of the claims that were dismissed by the Memorandum and Order of August 9, 2012, and therefore should only include the negligent misrepresentation claims from Counts III and VI, and the fifteen plaintiffs' Missouri Human Rights Act age discrimination claims from Count VIII.

**Failure to comply fully and timely with this Order may result in the imposition of further sanctions for failure to comply with the Orders of the Court, including but not limited to contempt of Court or dismissal of this action.**

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  28th  day of December, 2012.