# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

DIANE FRANKLIN, et al.,    )
            )
    Plaintiffs,    )
            )
   v.         )    No. 4:12-CV-307 CAS
            )
PINNACLE ENTERTAINMENT, INC., )
            )
    Defendant.    )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Pinnacle Entertainment, Inc.'s ("defendant")

Motion for Summary Judgment on the remaining claims in this action, Counts III and VI of

plaintiffs' Second Amended Complaint. Plaintiffs oppose the motion and it is fully briefed. For the

following reasons, the motion for summary judgment will be granted.

## I.  Background

This action was filed in the Circuit Court of the City of St. Louis, State of Missouri, on

November 18, 2011, by sixty-seven plaintiffs asserting state law claims for breach of contract,

employment discrimination in violation of the Missouri Human Rights Act, Mo. Rev. Stat.

§§ 213.010, et seq. (2000), and negligent and intentional infliction of emotional distress. The case

arises out of the plaintiffs' layoff from employment at defendant's now-closed President Casino in

St. Louis. Defendant removed the action to this Court based on diversity of citizenship pursuant to

28 U.S.C. §§ 1332 and 1441.

Plaintiffs were granted leave to file a First Amended Petition which added several parties to

the action and asserted additional claims for breach of contract and fraudulent and negligent

misrepresentation. Defendant moved to dismiss the First Amended Petition for failure to state a

claim upon which relief may be granted.  By Memorandum and Order of August 9, 2012 (Doc. 70), the Court granted the motion to dismiss plaintiffs' breach of contract, fraudulent misrepresentation, and negligent and intentional infliction of emotional distress claims.  The Court refused to dismiss plaintiffs' claims for negligent misrepresentation in Counts III and VI, and the age discrimination claims of fifteen plaintiffs under the Missouri Human Rights Act ("MHRA") in Count VII.

By Memorandum and Order of December 28, 2012 (Doc. 79), the Court granted defendant's motion for sanctions under Rule 11, Fed. R. Civ. P., and struck plaintiffs' First Amended Petition from the record for filing error because in it were joined two plaintiffs who lacked standing and it misnamed approximately fourteen other plaintiffs.  The Court ordered plaintiffs to file a Second Amended Complaint in order to correct the errors detailed in the Order of December 28, 2012.

Plaintiffs filed their Second Amended Complaint on January 4, 2013.  This is the current Complaint in the case, and includes only two counts:  Count III by all plaintiffs alleging negligent misrepresentation in connection with promises to transfer and rehire them at a different gaming facility owned by defendant if they continued to work at the President Casino until it closed; and Count VI by fifteen plaintiffs alleging negligent misrepresentation in connection with promises of severance packages, sick pay and bonuses if they continued to work at the President Casino until it closed.[1]

On July 10, 2013, the Court granted plaintiffs' motion to voluntarily dismiss several plaintiffs from the action without prejudice, and the claims of plaintiffs Dierder Arnold, Jamie Bailey, Jose Castorena, Paula Cranmer, Hazel Doss, Michael Holl, Mark Hughes, Scott Johnson,

---

[1]Count VI is asserted on behalf of the same fifteen plaintiffs who had previously asserted MHRA age discrimination claims in Count VII.  The age discrimination claims were abandoned when they were not reasserted in the Second Amended Complaint.

Timothy Lovett, Joan Nischbach, Darrian Oliver, Antionette Parker, James Perry, Curtis Pettis, Kevin Saeger, and David Sherrod were dismissed.  See Memorandum and Order of July 10, 2013 (Doc. 122).

## II.  Summary Judgment Standard

The en banc Eighth Circuit recently clarified the appropriate standard for consideration of motions for summary judgment, including those filed in employment discrimination cases, explaining as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial.  On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts.  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted).

"Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial."  Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008) (cited case omitted).  To show that "disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in

identifying 'facts that might affect the outcome of the suit'" and then "categorize the factual disputes in relation to the legal elements" of his claim. <u>Quinn v. St. Louis County</u>, 653 F.3d 745, 751-52 (8th Cir. 2011) (quoted and cited cases omitted). Thus, to survive a motion for summary judgment, the nonmoving party must "explain the legal significance of [his] factual allegations beyond mere conclusory statements importing the appropriate terms of art" and provide a "meaningful legal analysis explaining how, under the applicable law, the disputed facts might prove [his] claim at trial." <u>Id.</u> at 752 (internal citations omitted).

## III. Findings of Fact

A. <u>Plaintiffs' Failure to Comply with Local Rule 4.01(E)</u>

As a threshold matter, Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. <u>Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies</u>. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. <u>All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party</u>.

E.D. Mo. L.R. 4.01(E) (emphasis added).

This local rule "exists to prevent a district court from engaging in the proverbial search for a needle in the haystack. Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." <u>Libel v. Adventure Lands of America, Inc.</u>, 482 F.3d 1028, 1032 (8th Cir. 2007) (internal quotation and citation omitted).

In response to defendant's Statement of Uncontroverted Material Facts ("Statement of Facts"), the plaintiffs did not comply with the requirements of Local Rule 4.01(E). Instead of identifying the paragraphs of defendants' Statement of Facts as to which plaintiffs assert that a genuine dispute exists in accordance with Rule 4.01(E), plaintiffs reproduced defendants' Statement of Facts with modifications, additions and subtractions, usually without specific citations by plaintiffs to record evidence. Plaintiffs have added new paragraphs of fact to their response and entirely failed to respond to several of defendant's Statement of Facts.

Plaintiffs do not provide specific references to record evidence for the majority of their statements in response to defendant's Statement of Facts. Although plaintiffs have added in bold, "Disputed Facts as to ¶__" for some of the paragraphs which they changed from defendant's Statement of Facts, most do not contain record citations. In many paragraphs, plaintiffs have included defendant's citations to the record (e.g., Pls.' Resp. ¶¶ 1, 3, 11, 14); in others, they have either eliminated or changed defendant's record citations (e.g., Pls.' Resp. ¶¶ 5, 6, 7, 23, 28, 29). In some paragraphs, plaintiffs have failed to provide record citations (e.g., Pls.' Resp. ¶¶ 1, 2, 3, 8, 10), and in others they added non-specific references to affidavits attached to their Response (e.g., Pls.' Resp. ¶¶ 4, 9, 11, 14). In many paragraphs, plaintiffs simply refer to "Affidavit," "Fink Affidavit" and/or and "Robinson Affidavit," (e.g., Pls.' Resp., ¶¶ 4, 9, 11, 12, 14, 21), without specifying where in those affidavits the fact is supported. Most egregiously, paragraph 32 of plaintiffs' Response provides a citation to "Robinson and Fink Affidavits, the responses of each Plaintiff a [sic] their Deposition, their Second Amended Complaint." These references do not comply with Rule 56(c)(1)(A) and Local Rule 7-4.01(E)'s requirements that references to materials in the record be "particular" and "specific."

More importantly, many of the citations plaintiffs do provide in their Response do not support their factual statements. See, e.g., Pls.' Resp., ¶¶ 16, 21, 23, 30, 31, 33, 34, 35. For example, in Paragraph 16 of plaintiffs' Response, they contend that statements made by defendant to employees on March 10, 2010 "were either false or made to mislead employees into staying employed at the President Casino believing that if they stayed until the Casino closed that they would be taken care of." Plaintiffs' citation for this statement is to "Robinson and Bell Affidavits," but neither of those affidavits support plaintiffs' assertion. Walter Robinson testified that the statements he made on March 10, 2010 "were true at the time they were made . . . ." (Affidavit of Walter Robinson ("Robinson Aff."), (Doc. 146-2), ¶ 15). The Affidavit of Jack Bell ("Bell Aff.") (Doc. 146-3) contains no reference at all to the March 10, 2010 meeting and no assertion that the statements made that day were "false."

In addition, as defendant points out, a number of the documents plaintiffs attached to their Response lack foundation. Attached to the Robinson Affidavit, the Affidavit of Michael Fink ("Fink Aff."), and plaintiffs' Response, are the following documents for which there is no foundation and or authentication, either in the affidavits or elsewhere: Robinson Aff. Exhibits 4, 5, 6, 7, 8 and 9; Fink Aff. Exhibit 1, and Deposition Exhibits 39, 103 and 112. "To be considered on summary judgment, documents must be authenticated by and attached to an affidavit made on personal knowledge setting forth such facts as would be admissible in evidence or a deposition that meets the requirements of Fed. R. Civ. P. 56(e)." Stuart v. General Motors Corp., 217 F.3d 621, 635 n.20 (8th Cir. 2000)). "Documents which do not meet those requirements cannot be considered." Id. "The burden of authenticating evidence is on the proponent of the evidence. Fed. R. Evid. 901(a). 'To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'"

Fed. R. Evid. 901(a.)." Life Investors Ins. Co. of Am. v. Federal City Region, Inc., 687 F.3d 1117, 1121-22 (8th Cir. 2012). Plaintiffs have set forth no record evidence authenticating these documents, and therefore the Court will not consider them.

In addition, defendant asserts that Robinson Affidavit Exhibits 1, 2 and 3 and Fink Affidavit Exhibit 1 were never provided to defendant, despite its written discovery requests that clearly encompassed these documents. Plaintiffs did not seek leave of Court to file a surresponse to rebut this assertion, and the Court therefore accepts it as true. Plaintiffs cannot rely on documents that they did not produce in discovery to oppose defendant's motion for summary judgment.

Plaintiffs' failure to comply with Federal Rule 56(c) and Local Rule 4.01(E) warrants the Court deeming admitted the following of defendant's Statement of Facts and disregarding the following of plaintiffs' Responses that do not comply with the Rules:

• Paragraphs 3, 5, 6, 12, and 21 of defendant's Statement of Facts are deemed admitted because plaintiffs' Response does not deny them and plaintiffs have failed to set forth any statements, responses, or record evidence in response to, or disputing, the statements contained therein.

• Paragraphs 1, 2, 4, 7, 8, 9, 10, 11, 13, 15, 16, 17, 19, 20, 21, 22, 23 and 24 of defendant's Statement of Facts are deemed admitted because plaintiffs' Response does not materially alter or dispute any fact set forth in those paragraphs.

• Paragraphs 1, 2, 3, 4, 5, 7, 9, 10, 12, 13, 14, 15, 16, 17, 19, 20, and 21 of defendant's Statement of Facts are deemed admitted because plaintiffs' Response does not provide specific references to portions of the record upon which plaintiffs rely.

• Paragraphs 14, 17, 18, 22 and 24 of defendant's Statement of Facts are deemed admitted because the record citations provided in plaintiffs' Response do not support their disputation of those paragraphs.

• Paragraphs 16, 17, 21, 23, 30, 31, 32, 33, 34, 35 of plaintiffs' Response are disregarded because the record citations provided by plaintiff do not support the factual assertions therein.

• Paragraphs 9 and 20 of plaintiffs' Response are disregarded because they do not assert material facts.

B. <u>Findings of Fact</u>

The Second Amended Complaint ("Complaint") asserts two counts of negligent misrepresentation and no other claims against defendant. (Doc. 86) In March 2010, the President Casino, Lumiere Place Casino, and River City Casino – subsidiaries of Pinnacle Entertainment, Inc. – were operating independently of each other in the St. Louis, Missouri area. (Affidavit of Kerby Moore ("Moore Aff.") ¶ 3).

The plaintiffs remaining in this lawsuit are Tanya Armstrong-Gines ("Armstrong-Gines"), Demarcus Arnold ("Arnold"), Deborah Bailey ("Bailey"), Jack Bell ("Bell"), Terrell Borders ("Borders"), Kenneth Clay ("Clay"), Cecil Coats ("Coats"), Linda Cotton ("Cotton"), Dietra Cunningham ("Cunningham"), Gary Eastridge ("Eastridge"), Larry Fellows ("Fellows"), Michael Fink ("Fink"), Glenn Ford ("Ford"), Diane Franklin ("Franklin"), Pamela Franklin-Hamilton ("Franklin-Hamilton"), Amy Gavlik ("Gavlik"), Clifton Gordon "(Gordon"), Archie Green ("Green"), Stephanie Hamiel ("Hamiel"), Lori Hargrove ("L. Hargrove"), Richard Hargrove ("R. Hargrove"), Martisa Holmon ("Holmon"), Tonja Hull ("Hull"), Joseph Jennemann ("Jennemann"), Natoya Johnson ("Johnson"), Diane Joyce ("Joyce"), David Kennedy ("Kennedy"), Dennis Lash ("Lash"), Marilyn Lee-Taylor ("Lee-Taylor"), Jennifer Lippert ("Lippert"), Maxine Love ("Love"),

Ronald Martin ("R. Martin"), Ronald Martin, Jr. ("R. Martin, Jr."), Thomas Martin ("T. Martin"), Jack Maysey ("Maysey"), Myron Minner ("Minner"), Darrel Mueth ("Mueth"), Joseph Pavlik ("Pavlik"), Craig Rapert ("Rapert"), Perez Rayford ("Rayford"), Diane Rhodes ("Rhodes"), Demetrius Rich ("Rich"), Tyree Richards ("Richards"), Walter Robinson ("Robinson"), Linda Schreck ("Schreck"), Katina Scott ("Scott"), John Seibert ("Seibert"), Lizett Simmons ("Simmons"), Laura Smith ("Smith"), Daniel Spradling ("Spradling"), Alimetric Stewart ("Stewart"), Melvin Thomas ("Thomas"), Anthony Watson ("Watson") and Raymond Woods ("Woods ") (hereafter collectively referred to as "plaintiffs"). (Complaint; Doc. 122).

The plaintiffs were employed by the President Casino during the time period between March 10, 2010 and the closing of the President Casino on or about July 1, 2010. (Complaint, Count III, ¶ 1). No plaintiff or employee had a contract for employment with the President Casino for a definite period of time in 2010. (Christopher Strobbe Affidavit ("Strobbe Aff.") ¶ 7). All plaintiffs and all employees of the President Casino were at-will employees. (Strobbe Aff. ¶ 8).

Since at least 2004, the President Casino has distributed an Employee Handbook and/or made an Employee Handbook available for all employees to review upon request. (Strobbe Aff. ¶ 10). President Casino employees were expected to abide by the policies and procedures set forth in the President Casino Employee Handbook. (Strobbe Aff. ¶ 11). Since at least 2004, the President Casino Employee Handbook contained a statement titled "Understanding By Employee" (see, e.g., Deposition Exhibits 29 and 40) which was signed by employees upon receipt of the Handbook and torn out and returned to the President Casino. (Strobbe Aff. ¶ 13 and Dep. Ex. 40; Walter Robinson Deposition ("Robinson Dep.") at 42:13-21, 99:21-101:15 and Dep. Ex. 29; Moore Aff. ¶¶ 4, 5).

The Employee Handbook "Understanding By Employee" states, in relevant part:

I understand that the information in the President Casino's Handbook represents guidelines only and that the Company reserves the right to modify this Handbook or amend or terminate any policies, procedures, or employee benefit programs whether or not described in this Handbook at any time, or to require and/or increase contributions toward these benefit programs. I understand that I am responsible for reading the Handbook, familiarizing myself with its contents, and adhering to all of the policies and procedures of the President Casino, whether set forth in this Handbook or elsewhere.

I understand that this Handbook is not a contract of employment, express or implied, between me and the President Casino and that I should not view it as such, or as a guarantee of future employment for any specific duration.

I further understand that no manager or representative of the President Casino, other than the Director of Human Resources or the VP/General Manager has any authority to enter into any agreement guaranteeing employment for any specified period of time. I also understand that any such agreement, if made, shall not be enforceable unless it is in a formal written agreement signed by both me and the Director of Human Resources or the VP/General Manager.

I acknowledge that no supervisor, manager, or other representative of President Casino has the authority to make any verbal promises, commitments, or statements of any kind regarding the President Casino's policies, procedures, or any other issues that are legally binding on the Company.

(Robinson Dep. at 99:21-101:15 and Dep. Ex. 29; Strobbe Aff. ¶ 15 and Dep. Ex. 40; Moore Aff. ¶¶ 4, 5).

On March 10, 2010, defendant announced to the public and its employees that the President Casino would close by July 1, 2010. (Strobbe Aff. ¶¶ 16-17; Complaint, Count III, ¶ 4). On March 10, 2010, the employees, including plaintiffs, were told their employment with the President Casino would end upon the permanent closure of the President Casino on or about July 1, 2010. (Strobbe Aff. ¶ 17; Complaint, Count III, ¶ 4).

On March 10, 2010, employees were told they would have the opportunity to apply for jobs at Lumiere Place Casino or River City Casino under defendant's past transfer policies and procedures. (Strobbe Aff. ¶ 18; Complaint, Count III, ¶ 7; Robinson Dep. at 309:11-311:13;

Robinson Aff. ¶ 6). The statements made to plaintiffs on March 10, 2010 were true at the time they were made. (Robinson Dep. at 419:2-10; Robinson Aff. ¶ 15). No plaintiff was promised or guaranteed future employment with defendant, and no plaintiff was promised or guaranteed employment with defendant for any definite period of time. (Strobbe Aff. ¶¶ 20-21; Robinson Dep. at 55:8-17). Some employees of the President Casino applied and were hired to work at other Pinnacle Entertainment, Inc. casinos after March 10, 2010. (Robinson Dep. at 35:3-17; Strobbe Aff. ¶ 22).

Plaintiffs and other employees were orally informed between March 10, 2010 and April 20, 2010 that they would receive severance packages and retention bonuses if they continued to work until the President Casino closed. (Robinson Aff. ¶ 27). Pinnacle's corporate management examined and discussed with President Casino General Manager Christopher Strobbe and Director of Human Resources Walter Robinson proposed severance packages and bonuses for employees losing their jobs at the President Casino in 2010. (Strobbe Aff. ¶ 25). Plaintiffs and other employees were told that defendant was working on a severance package, but ultimately were never provided with any specific, finalized details regarding severance packages or retention bonuses, either verbally or in writing, in 2010. (Strobbe Aff. ¶¶ 24, 26).

On or about April 20, 2010, Chris Strobbe informed plaintiffs and other employees, in writing, that no severance packages or retention bonuses would be provided when the President Casino closed. (Strobbe Aff. ¶¶ 28–31; Complaint, Count III, ¶ 6, Count VI, ¶ 4; Robinson Dep. at 77:6-20; Robinson Aff. ¶ 30). No written documentation offering job transfers, severance packages, retention or bonuses regarding the 2010 layoff was ever distributed to employees of the President Casino. (Complaint, Count III, ¶ 4, Count VI, ¶¶ 2, 3; Strobbe Aff. ¶¶ 7, 27; Robinson Dep. at 338:8-16). Defendants' employees from the President Casino that were hired at another Pinnacle

11

Entertainment, Inc. location were not eligible for severance, retention or other bonus. (Robinson Dep. at 337:4-93).

**IV. Discussion**

    A.  <u>Negligent Misrepresentation - Failure to Transfer or Rehire - Count III</u>

Count III of the Complaint alleges that defendant orally represented to all of the plaintiffs on March 10, 2010, that if they continued to work at the President Casino until it closed they would be transferred and rehired at other facilities owned by defendant, at the same salary, benefits and seniority. Plaintiffs allege that defendant did not know the representations were false and that plaintiff relied on the representations. Count III asserts a claim of negligent misrepresentation.

Under Missouri law, the elements of negligent misrepresentation are:

> (1) the speaker supplied information in the course of his business; (2) because of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss. <u>Dancin Development, L.L.C. v. NRT Missouri, Inc.</u>, 291 S.W.3d 739, 744 (Mo. App. 2009). A party must prove every element of a claim for negligent misrepresentation for the claim to succeed. <u>Id.</u>

<u>Renaissance Leasing, LLC v. Vermeer Mfg. Co.</u>, 322 S.W.3d 112, 134 (Mo. 2010) (en banc).

Defendant moves for summary judgment arguing that plaintiffs' negligent misrepresentation claims in Count III are precluded by the Missouri at-will employment doctrine, because plaintiffs cannot establish the element of reliance on a promise of at-will employment as a matter of law. The Court agrees.

In Missouri, "Employees who do not have a contract for a definite period of time are considered 'employees-at-will.'" <u>Amaan v. City of Eureka</u>, 615 S.W.2d 414, 415 (Mo. 1981 (en banc). It is undisputed that none of the plaintiffs had a contract for employment for a definite period

of time, and therefore were at-will employees. "Under Missouri's employment at will doctrine an employer can discharge–for cause or without cause–an at will employee who does not otherwise fall within the protective reach of a contrary statutory provision and still not be subject to liability for wrongful discharge." <u>Dake v. Tuell</u>, 687 S.W.2d 191, 193 (Mo. 1985) (en banc) (cited case omitted). The Missouri Supreme Court has stated, "The rule is well established in this state and elsewhere that in the absence of a contract for employment for a definite term or a contrary statutory provision, an employer may discharge an employee at any time, without cause of reason, or for any reason and, in such case, no action can be maintained for wrongful discharge." <u>Christy v. Petrus</u>, 295 S.W.2d 122, 124 (Mo. 1956) (en banc) (citing cases).

Although the at-will employment doctrine is typically invoked in the context of wrongful discharge claims, its principles also bar claims asserting detrimental reliance on promises of future at-will employment. <u>See</u>, <u>e.g.</u>, <u>Faust v. Ryder Commercial Leasing & Services</u>, 954 S.W.2d 383, 393 (Mo. Ct. App. 1997) (affirming directed verdict against plaintiff on promissory estoppel and negligent and intentional misrepresentation claims based on promise to rehire the plaintiff as an at-will employee), <u>abrogated on other grounds by</u> <u>Fleshner v. Pepose Vision Institute, P.C.</u>, 304 S.W.3d 81 (Mo. 2010) (en banc); <u>Rosatone v. GTE Sprint Commc'ns</u>, 761 S.W.2d 670, 674 (Mo. Ct. App. 1988) (affirming dismissal of promissory estoppel claim based on a promise of employment at will); <u>Morsinkhoff v. DeLuxe Laundry & Dry Cleaning Co.</u>, 344 S.W.2d 639, 643-44 (Mo. Ct. App. 1961) (promissory estoppel claim based on a promise to hire failed as a matter of law, where the promise was for at-will employment).

Missouri courts have also held that employer policies unilaterally imposed on at-will employees, in other words, the terms and conditions of employment, are not contracts enforceable at law and the employer reserves the right to modify or discontinue those policies as it chooses.

Morrow v. Hallmark Cards, Inc., 273 S.W.3d 15, 26 (Mo. Ct. App. 2008); see, e.g., West Central Missouri Reg'l Lodge No. 50 v. Board of Police Comm'rs of Kansas City, Mo., 939 S.W.2d 565, 569 (Mo. Ct. App. 1997) (employer was free to modify policy contained in its employee personnel manual regarding educational requirements for positions).

Here, plaintiffs' claims are for negligent misrepresentation in Count III are based on defendant's promises to transfer or rehire them at defendant's other facilities if they continued to work at the President Casino until it closed. Plaintiffs allege that defendant made promises of future employment, but do not allege that the promises of employment were for a definite term. As a result, the alleged promise was for employment at will. See Faust, 954 S.W.2d at 393 (citing Rosatone, 761 S.W.2d at 672).

To make a submissible case of negligent misrepresentation, plaintiffs must show reliance on a representation that proximately caused the damages they claim. Faust, 954 S.W.2d at 393 (citing cases). The Missouri Court of Appeals has stated, "In this respect, the lesson of Morsinkhoff and Rosatone . . . is clear, no damages can flow from the plaintiff's misplaced 'reliance' on a promise to hire as an at-will employee, regardless of the creative theory delineated in order to 'outflank' the employment-at-will doctrine." Faust, 954 S.W.2d at 393-94. "Thus, as a matter of law, claims of . . . negligent misrepresentation, which are predicated on reliance, will not lie where the reliance is based on a promise to hire as an employee at-will." Id. at 394.

Here, plaintiffs were at-will employees. There is no allegation or evidence that defendant's alleged promise to transfer or rehire the plaintiffs at its other facilities was a promise to hire or transfer them for a definite term, nor is there any evidence plaintiffs received assurances or guarantees that defendant would offer them employment for a definite term if they were transferred

14

or rehired at another facility. Defendant is therefore entitled to summary judgment on the negligent misrepresentation claims in Count III, based on <u>Faust</u>, <u>Rosatone</u> and <u>Morsinkhoff</u>.

In opposing defendant's summary judgment motion, plaintiffs state they "relied on the very simple premiss [*sic*] that they believed and were told by the Defendant . . . by and through its authorized agents (Chris Strobbe, General Manager and Walter Robinson, Director of Human Resources), that if they stayed and worked until the closing of the President Casino they would be allowed to either transfer to jobs within the company . . . or receive a severance and retention bonus." Pls.' Mem. Opp. at 3-4. Plaintiffs then list what they assert to be the elements of their prima facie case of negligent misrepresentation, citing various affidavits and the "Depositions of the 54 Plaintiffs," but fail to provide any explanation or argument as to how the referenced materials create a genuine issue of material fact. <u>Id.</u> at 4. As stated above, to show that disputed facts are material, parties "opposing summary judgment must cite to the relevant substantive law in identifying 'facts that might affect the outcome of the suit'" and then "categorize the factual disputes in relation to the legal elements" of their claim. <u>Quinn</u>, 653 F.3d at 751-52.

Plaintiffs' opposition does not mention the Missouri at-will employment cases on which defendant relies, and makes no attempt to discuss or distinguish those cases. Immediately after their recitation of the final element of the negligent misrepresentation prima facie case, pecuniary loss, plaintiffs cite <u>Jennings v. SSM Health Care St. Louis</u>, 355 S.W.3d 526, 537 (Mo. Ct. App. 2011), but fail to discuss or explain the significance of <u>Jennings</u>. To survive a motion for summary judgment, the nonmoving parties must "explain the legal significance of [their] factual allegations beyond mere conclusory statements importing the appropriate terms of art" and provide a "meaningful legal analysis explaining how, under the applicable law, the disputed facts might prove [their] claim at

trial." Quinn, 653 F.3d at 752 (internal citations omitted). Because plaintiffs do not explain how Jennings supports their case, they have not met this requirement.

Nonetheless, the Court has examined Jennings to determine whether it precludes summary judgment on Count III, and concludes that it does not. Jennings was an appeal from the dismissal of a petition alleging claims including breach of a written employment agreement, breach of a written severance policy, and fraudulent and negligent misrepresentation. With respect to the negligent misrepresentation claim, the motion to dismiss asserted only that the plaintiff failed to plead supporting facts. Id. at 538. As a result, this was the only issue addressed by the court of appeals with respect to the negligent misrepresentation claim. "The maxim of stare decisis applies only to decisions on points arising and decided in causes." Broadwater v. Wabash R. Co., 110 S.W. 1084, 1086 (Mo. 1908) (quotation omitted); see also State ex rel. Baker v. Goodman, 274 S.W.2d 293, 297 (Mo. 1954) (en banc) ("There is no doctrine better settled than that the language of judicial decisions must be construed with reference to the facts and issues of the particular case, and that the authority of the decision as a precedent is limited to those points of law which are raised by the record, considered by the court, and necessary to a decision."). The Court finds nothing in Jennings that assists the plaintiffs in this case.

Accordingly, the Court finds that plaintiffs' claims based on defendant's alleged promises to transfer them or rehire them at its other facilities are barred by the Missouri at-will employment doctrine. Defendant is therefore entitled to summary judgment on plaintiffs' negligent misrepresentation claims in Count III.

B. Negligent Misrepresentation - Severance Packages - Count VI

In Count VI of the Complaint, fifteen plaintiffs allege that defendant negligently misrepresented to them on March 10, 2010 that if they continued to work until the President Casino

closed, they would be paid a severance package, sick pay and retention bonuses (Complaint, Count VI, ¶ 2), but defendant subsequently advised plaintiffs on April 20, 2010 that "no retention provision would be offered for them to transfer" to its other facilities, "nor would they be offered a severance package." (Complaint, Count VI, ¶ 4).[2]

Defendant moves to dismiss Count VI on the basis that Missouri's at-will employment doctrine is equally applicable to an employer's right to unilaterally impose or change the terms and conditions of employment, and that the alleged promises made on March 10, 2010 and later rescinded were unilateral changes of the term of employment. Defendant cites Morrow, 273 S.W.3d at 26 ("Employer policies unilaterally imposed on at-will employment (i.e., terms and conditions of employment) are not contracts enforceable at law."); Johnson v. McDonnell Douglas Corp., 745 S.W.2d 661, 662 (Mo. 1988) (en banc) (employee handbook containing employer's policies and stating that it was subject to change at any time did not create employment contract altering plaintiff's at-will employment status); and West Central, 939 S.W.2d at 569 (at-will employees could not maintain an action for promissory estoppel based on employer's unilateral adoption of stricter education requirements for promotions, as employer was free to change its policy in the absence of promises that the policy would not be modified in the future).

Defendant is correct that because the plaintiffs were at-will employees, the terms and conditions of their employment were subject to change by defendant at any time, absent promises by defendant not to change them. See West Central, 939 S.W.2d at 569; Albers v. Cardinal Glennon

---

[2]In Count VI, the fifteen plaintiffs allege that defendant "knew the representations were false or did not know the representations were false at [the] time but continued to make them." Complaint at 4, ¶ 8. The Court dismissed plaintiffs' fraudulent misrepresentation claims by Memorandum and Order of August 9, 2012 (Doc. 70). The plaintiffs' conclusory allegation in Count VI that defendant knew the representations were false is therefore surplusage that the Court ignores.

<u>Children's Hosp.</u>, 729 S.W.2d 519, 523 (Mo. Ct. App. 1987). In <u>Albers</u>, hospital employees filed suit attempting to enforce a discontinued wage and scheduling program that was set forth in the employee handbook. <u>Id.</u> The Missouri Court of Appeals held that employees could not recover on their claims for breach of contract because the employer could unilaterally change or discontinue the program: "In the absence of some valid, additional legal consideration exchanged for the asserted continuous nature of the employment, the conditions of the employment may be changed at will of the employer upon the giving of reasonable notice." <u>Id.</u> The court also held that the employees could not maintain a claim for promissory estoppel, as the employer had not promised that the policies set forth in the employee handbook would not be changed. <u>Id.</u>

Similarly, in <u>West Central</u>, the Missouri Court of Appeals affirmed the dismissal of a promissory estoppel claim based on allegations that the employer changed the promotion policies contained in its personnel manual. 939 S.W.2d at 570. Citing <u>Albers</u>, the court held that although the plaintiffs had been promised a policy regarding requirements for advancement, there was no allegation that they were promised the policy would not be modified in the future, and therefore the employees failed to state a claim upon which relief could be granted. <u>Id.</u>

As the Missouri Court of Appeals explained in <u>Morrow</u>, "Employment-at-will is not a *legally enforceable employment relationship* because it is terminable at the will of either party, on a moment-by-moment basis." 273 S.W.3d at 26. Further, "In at-will employment, either party can announce at any time that there are new conditions on either working or on providing work. The other can say yes or no." <u>Id.</u>

> To belabor the obvious: if an employer, for instance, announces to an employee that he or she will be reassigned to the night shift, and the employee declines the night shift, the employee is not entitled to legally compel the employer to keep offering the day shift. Neither is the employer entitled to legally compel the employee to work

the night shift. Each one may terminate the employment, but neither one has an action at law.

Morrow, 273 S.W.3d at 26.

Assuming that defendant on March 10, 2010 orally promised the fifteen plaintiffs that they would receive severance packages, sick pay and retention bonuses if they continued to work until the casino closed, it informed the plaintiffs on April 20, 2010, that they would not receive such benefits. Plaintiffs do not allege that defendant promised it would not modify its promise of these benefits, or that defendant was not entitled to modify the promise. As at-will employees, the plaintiffs were not otherwise entitled to severance packages, sick pay or retention bonuses. Under these circumstances, defendant's promise of benefits amounted to nothing more than a unilaterally imposed term of employment, that did not alter defendant's right to modify or discontinue the term at its discretion. As a result, the plaintiffs' only recourse when the promise was rescinded on April 20, 2010 was either to quit or to continue working under the new terms of employment. See Morrow, 273 S.W.3d at 26; Albers, 729 S.W.2d at 523.

Because there is no genuine issue of material fact that the fifteen plaintiffs received a promise or guarantee that defendant would not modify or terminate the promised benefit of severance, sick pay or retention bonuses, defendant is entitled to judgment as a matter of law on Count VI.

C. Plaintiffs Cannot Establish a Prima Facie Case of Negligent Misrepresentation

The Court has concluded that plaintiffs' negligent misrepresentation claims in Counts III and VI fail as a matter of law based on the Missouri at-will employment doctrine. Defendant also argues that plaintiffs cannot establish several of the elements of negligent misrepresentation. A party must prove every element of a claim for negligent misrepresentation for the claim to succeed. Renaissance Leasing, 322 S.W.3d at 134.

### 1. *Plaintiffs Cannot Establish That a False Representation Was Made*

The second element of a claim for negligent misrepresentation is that because of the speaker's failure to exercise reasonable care, the information was false. Id. Defendant argues that plaintiffs have not offered any evidence to establish that it failed to exercise reasonable care or competence in obtaining or communicating the allegedly false information regarding job transfers, rehiring, severance pay or retention bonuses. More importantly, defendant argues that plaintiffs admit the statements made on March 10, 2010, that form the basis of their claims, were true at the time they were made. See Robinson Aff. ¶ 15 ("The statements that I made on March 10, 2010 through April 20, 2010 were true at the time they were made but later became false; that Chris Strobbe and I had been informed to tell the President Casino employees that they were to receive severance, retention bonuses, and would be eligible to apply for transfer to the other St. Louis Pinnacle Entertainment, Inc,. properties.").

To establish a claim of negligent misrepresentation, plaintiffs must prove that a false representation was made. Renaissance Leasing, 322 S.W.3d at 134. The admission that the statements made by defendant through its Director of Human Resources Walter Robinson were true when they were made is fatal to plaintiffs' negligent misrepresentation claims. See Baum v. Helget Gas Prods., Inc., 440 F.3d 1019, 1024 (8th Cir. 2006) (under Missouri law, plaintiff's admission that defendant did not make a materially false statement was fatal to his claims of negligent and intentional misrepresentation). As in this case, "the evidence shows only that [defendant] did not perform according to a promise (if made), which is insufficient" to establish negligent misrepresentation. Id. at 1024-25 (citing Urologic Surgeons, Inc. v. Bullock, 117 S.W.2d 722, 726 (Mo. Ct. App. 2003)).

When the evidence is viewed in the light most favorable to the plaintiffs, it shows that defendant promised plaintiffs they would be transferred or rehired, or given severance or retention packages if they continued to work at the President Casino until it closed, and that this promise was true when it was made, but defendant subsequently rescinded the promise and did not perform. Plaintiffs therefore cannot establish an essential element of their negligent misrepresentation claim, that a false representation was made to them. Defendant is therefore entitled to summary judgment as a matter of law for this reason as well.

2. *Plaintiffs Cannot Establish They Suffered a Pecuniary Loss*

The fifth and final element of a claim for negligent misrepresentation is that "due to the hearer's reliance on the information, the hearer suffered a pecuniary loss." Renaissance Leasing, 322 S.W.3d at 134. Defendant asserts that it is entitled to summary judgment because plaintiffs allege only economic damages and do not allege pecuniary loss. The Court agrees.

"Missouri follows the pecuniary loss rule, which states that 'the damages recoverable for a negligent misrepresentation *do not include the benefit of the plaintiff's contract with the defendant*.' Restatement (Second) of Torts § 552B (1977), *quoted in* Frame v. Boatmen's Bank of Concord Vill., 824 S.W.2d 491, 496 (Mo. Ct. App. 1992) (emphasis added)." Jenkins v. KLT, Inc., 308 F.3d 850, 858 (8th Cir. 2002); see Hartford Acc. and Indem. Co. v. Contico Int'l, Inc., 901 S.W.2d 210, 212-13 (Mo. Ct. App. 1995). "The rationale is that there should be no liability in tort merely for negligent conduct by the promisor that interferes with or frustrates the promisee's pecuniary expectancy arising from the contract." Jenkins, 308 F.3d at 858. "A promisee can only recover damages for pecuniary loss incurred in reasonable reliance on a misrepresentation negligently made by the promisor." Id. Thus, under the pecuniary loss rule, a plaintiff in a negligent misrepresentation case may not recover "benefit-of-the-bargain damages." Id. at 859.

Here, the plaintiffs seek damages for lost wages and benefits. <u>See</u> Complaint, Count III, ¶ 11; Count VI, ¶ 10. The Court interprets plaintiffs' claims for damages as seeking the wages plaintiffs would have been paid had they been transferred or rehired at defendant's other facilities as promised (Count III), and the severance packages, sick leave and retention bonuses they expected to receive as promised (Count VI).[3] Thus, the damages plaintiffs seek in this case are the benefit of their bargain with the defendant. <u>Cf</u>. <u>Jenkins</u>, 308 F.3d at 859 (incentive and severance awards plaintiff sought were benefits of his bargain with the defendant). Missouri law precludes plaintiffs from seeking benefit of the bargain damages for negligent misrepresentation. <u>Hartford</u>, 901 S.W.2d at 213; <u>Frame</u>, 824 S.W.3d 496-97.[4] Plaintiffs do not allege that they incurred any pecuniary loss incurred through their reliance on the alleged negligent misrepresentations. As a result, plaintiffs cannot establish the fifth element of the prima facie case of negligent misrepresentation, and defendant is entitled to summary judgment.

Because the Court concludes that plaintiffs cannot establish either the second or the fifth elements of a cause of action for negligent misrepresentation, it does not address defendant's final argument that plaintiffs also cannot establish the fourth element of the prima facie case, that they justifiably relied on the representations.

## V. Conclusion

For the foregoing reasons, the Court concludes that plaintiffs cannot establish claims of negligent misrepresentation as a matter of law, because their claims are barred by the Missouri at-will employment doctrine. In addition, plaintiffs' claims fail because they cannot establish all of the

---

[3]Plaintiffs do not allege that defendant failed to pay them for hours they actually worked.

[4]To recover benefit-of-the-bargain damages, plaintiffs would have had to prove fraudulent misrepresentation. <u>Frame</u>, 824 S.W.2d at 496.

elements of a cause of action for negligent misrepresentation. As a result, defendant's motion for summary judgment should be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Pinnacle Entertainment, Inc.'s motion for summary judgment is **GRANTED**. [Doc. 135]

An appropriate judgment will accompany this Memorandum and Order.


**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  25th  day of February, 2014.